BULLINGER v. GREMORE.

1. STATUTES—AMENDMENT—CONSTRUCTION OF STATUTES.

The construction of amendatory provisions of an amending act requires a determination as to the intent of the legislature, based on the language used and construed in the light of the general purpose sought to be accomplished (PA 1945, No 47, §§ 1, 3, as amended by PA 1952, No 170).

2. MUNICIPAL CORPORATIONS—COMMUNITY HOSPITAL AUTHORITY— AMENDATORY ACT—TAXATION—REVENUE BONDS—APPROVAL.

Act which added to community hospital authority act provisions requiring that municipality desiring to join the authority must approve the issuance of revenue bonds and subject itself to an assessment of not exceeding 4/10 of a mill on its last as-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 50 Am Jur, Statutes § 275.
[3] 50 Am Jur, Statutes § 475 et seq.
[5, 6] 37 Am Jur, Municipal Corporations § 79.
[5, 6] Right of municipality to invoke constitutional provisions against acts of State legislature. 116 ALR 1037.
[7] 11 Am Jur, Constitutional Law § 192; 51 Am Jur, Taxation § 42.
[8, 9] 38 Am Jur, Municipal Corporations §§ 413-415.
[10] 12 Am Jur, Constitutional Law § 418.
[13] 38 Am Jur, Municipal Corporations § 424.
[14] 51 Am Jur, Taxation §§ 741, 742, 749 et seq.
[16] 50 Am Jur, Statutes § 561.
[23] 11 Am Jur, Constitutional Law § 271.
[38] 14 Am Jur, Costs § 37.

sessed valuation did not require municipalities which had there-
tofore united with the hospital authority, prior to the adop-
tion of the amendatory act, to pass a resolution approving the
issuance of such bonds, where there was no specific provision
to that end in the amendatory act (PA 1945, No 47, §§ 1, 3,
as amended by PA 1952, No 170).

3. STATUTES—PROSPECTIVE OPERATION.
    Legislation is to have a prospective operation only, except where
    the contrary intent is expressly declared or is necessarily to
    be implied.

4. SAME—AMENDMENT—COMMUNITY HOSPITAL AUTHORITY.
    An amendatory statute providing for additional requirements
    for uniting with existing community hospital authority and
    requiring existing authorities to continue their functions and
    be subject, after the effective date of amendatory act, to
    the further incidents therein, assumes that the authorities
    and their constituent members were subject to the power
    of the legislature, acting in the furtherance of the public
    welfare, to make changes in matters of procedure and to
    limit or extend the rights granted as the necessity or ex-
    pediency thereof might require (PA 1945, No 47, §§ 1, 3,
    as amended by PA 1952, No 170).  '

5. MUNICIPAL CORPORATIONS—STATE AGENCIES—LEGISLATURE MAY
    MODIFY CHARTERS.
    Municipal corporations are State agencies and, subject to con-
    stitutional restrictions, the legislature may modify corporate
    charters of municipal corporations at will.

6. SAME—AMENDMENT OF CHARTERS BY STATE.
    Powers are granted to municipal corporations as State agencies
    to carry on local government and the State has authority to
    amend their charters and enlarge or diminish their powers.

7. CONSTITUTIONAL LAW—TAXATION—LEGISLATIVE AUTHORITY.
    The power to impose taxes is vested exclusively in the legislative
    department of government and cannot be exercised except in
    pursuance of its authority.

8. SAME—LEGISLATURE—MUNICIPAL DEBT LIMIT.
    Fixing the limit of municipal indebtedness is within the con-
    stitutional power of the legislature, which has full power and
    authority to increase it by general law (Const 1908, art 8,
    § 20).

9. SAME—LEGISLATURE—MUNICIPAL INDEBTEDNESS—TAXATION.

The legislature may regulate the amount of municipal indebtedness and the rate of taxation of cities (Const 1908, art 8, § 20).

10. SAME—LEGISLATURE—MUNICIPAL CORPORATIONS—DEBTS—TAXATION—IMPAIRMENT OF CONTRACTS.

The legislature's power to increase or decrease the limit of bonded indebtedness and rate of taxation of cities is subject to the prohibition of the Constitutions of the State and the United States that such legislation shall not operate directly on contracts so as to impair their obligation by abrogating or lessening the means of their enforcement (US Const, art 1, § 10; Mich Const 1908, art 2, § 9; art 8, § 20).

11. MUNICIPAL CORPORATIONS—COMMUNITY HOSPITAL AUTHORITY—SUBSEQUENT LEGISLATION.

Cities, villages and townships which became members of a community hospital authority, as permitted by statute, are presumed to have done so with the knowledge that the legislature might further regulate the State agency that had been formed (PA 1945, No 47, §§ 1, 3, as amended by PA 1952, No 170).

12. SAME—COMMUNITY HOSPITAL AUTHORITY—AMENDMENT OF STATUTE—BONDS—REFERENDUM.

Revenue bonds issued pursuant to amended community hospital authority act are obligations of the hospital authority, rather than of the constituent members, and while a resolution of the governing body of constituent members which had united with the authority prior to the amendatory act was not a prerequisite to the issuance of the bonds, they were subject to a referendum in the event a petition therefor was duly filed (PA 1945, No 47, § 8, as amended by PA 1952, No 170; CL 1948, § 141.101, as amended).

13. TAXATION—ASSESSED VALUATION—CONSTRUCTION OF STATUTES.

The term "assessed valuation," as used in community hospital authority act, permitting constituent municipalities to impose a tax of not exceeding 4/10 of a mill on each dollar of their assessed valuation means the State-equalized valuation, where there are constituent municipalities in more than 1 county, there being an expressed intent to require contributions, above estimated operating revenues, on a fair and equitable basis (PA 1945, No 47, §§ 4, 7, as amended by PA 1952, No 170).

14. SAME—STATE BOARD OF EQUALIZATION.

The State board of equalization is the final authority which

determines valuations upon a standard uniform to all counties (CL 1948, § 209.1 *et seq.*, as amended by PA 1949, No 287 and PA 1953, No 24).

15. SAME — COMMUNITY HOSPITAL AUTHORITY — CONTRIBUTIONS — STATE-EQUALIZED VALUATION.

Constituent municipality members of community hospital authority, located in more than 1 county and who are permitted to raise funds for contributions to the authority by an assessment of not more than 4/10 of a mill on each dollar of their assessed valuation must proceed on the basis of the State-equalized valuation (PA 1945, No 47, §§ 4, 7, as amended by PA 1952, No 170; CL 1948, § 209.1 *et seq.*, as amended by PA 1949, No 287 and PA 1953, No 24).

16. STATUTES — INTENT — SPECIAL STATUTE INCOMPATIBLE WITH GENERAL STATUTE.

A special statute is to be given effect as an exception to the general statute in order to carry out the legislative intent, where the 2 statutes express incompatible intentions.

17. BONDS — REVENUE BONDS — COMMUNITY HOSPITAL — GENERAL REVENUE BOND ACT — CONSTRUCTION OF STATUTES — PRIORITY OF CLAIM.

Community hospital authority act, designed to effectuate the special purpose of providing a plan under which hospitals for general public use may be established and maintained, which provided that principal and interest payments on revenue bonds issued thereunder should have prior claim upon revenues of the authority derived from constituent members which were permitted to raise their contributions by taxation up to a stated rate, and otherwise provided for operation and maintenance of the hospitals, was controlling over provisions of the general revenue bond act which gave priority in revenues to the operation and maintenance of the borrower (PA 1945, No 47, §§ 7, 8, as amended by PA 1952, No 170; CL 1948, § 141.122).

18. SAME — COMMUNITY HOSPITAL AUTHORITY — USE OF PROCEEDS OF REVENUE BONDS — EQUIPMENT AND SITES FOR HOSPITALS.

Money derived from the sale of revenue bonds of a community hospital authority, issued under a statute permitting such action for the purpose of "acquiring, purchasing, constructing, improving, enlarging or repairing such community hospitals" may be used for the purpose of equipping such hospitals and for acquiring real estate as sites therefor, since a hospital is not merely a building but must be equipped in such manner and to such an extent as to permit it to function

and the language of the statute must be construed in the light of the purpose sought to be accomplished (PA 1945, No 47, § 8, as amended by PA 1952, No 170, § 9, as amended by PA 1951, No 79).

19. MUNICIPAL CORPORATIONS—COMMUNITY HOSPITAL AUTHORITY— CONTRIBUTIONS—TAX DELINQUENCIES—CONSTRUCTION OF STATUTES.
A constituent municipality member of a community hospital authority may not claim a reduction in the sum certified to it as its proportionate share, because of tax delinquencies, where, although such members are permitted to impose a tax of 4/10 of a mill on their assessed valuation, their proportionate share is payable from any funds available and the statute provides that the share is an absolute obligation 120 days subsequent to the date the taxes become due and payable (PA 1945, No 47, §§ 7, 8, as amended by PA 1952, No 170).

20. TOWNSHIPS—COMMUNITY HOSPITAL AUTHORITY—TAX RATES— COUNTY TAX ALLOCATION BOARD.
Money raised by taxation by township as a constituent member of community hospital authority, a State agency, is not for the conduct of the affairs of the township but is to enable the health agency to perform its functions and is in addition to the minimum tax rate fixed by the county tax allocation board pursuant to the property tax limitation act and is included in the aggregate millage that may be apportioned under the tax limitation amendment to the Constitution (Const 1908, art 10, § 21, as amended by PA 1952, No 170; CL 1948, § 211.211, as amended by PA 1952, No 87).

21. MUNICIPAL CORPORATIONS—COMMUNITY HOSPITAL AUTHORITY— TAXATION.
The power to levy taxes conferred upon cities and villages as constituent members of a community hospital authority is in addition to taxing authority otherwise granted them, the hospital authority act specifically stating that powers therein granted are to be deemed an enlargement of any power granted to cities, incorporated villages and townships by their respective charters or the laws of the State (PA 1945, No 47, §§ 1, 3, 7, as amended by PA 1952, No 170).

22. HOSPITALS—COMMUNITY HOSPITAL AUTHORITY—HEALTH.
A community hospital authority is a State agency invested with functions concerning the health of the people of the State.

23. HEALTH—LEGISLATURE.
The legislature has a broad measure of control over the functions

of political institutions concerning the health of the people of the State.

24. CONSTITUTIONAL LAW—SALES TAX—USE OF PROCEEDS.

The provision of the Constitution returning to cities, villages and townships of a portion of the proceeds of the State sales tax levy is self-executing and contains no provision restricting the use of such funds by such local units to specified purposes (Const 1908, art 10, § 23, as added in 1946).

25. HOSPITALS—COMMUNITY HOSPITAL AUTHORITY—CONTRIBUTIONS —TAXES—SALES TAX APPORTIONMENT.

The contribution required by the hospital board of a community hospital authority from a constituent member is payable by the latter from any funds available therefor; hence, since there is no limitation that the source of payment be limited to funds collected from the tax levy, revenues returned to the cities, villages and townships from sales tax receipts may be used in paying such contributions or assessments (Const 1908, art 10, § 23, as added in 1946 and amended in 1954; PA 1945, No 47, § 7, as amended by PA 1952, No 170).

26. BONDS—COMMUNITY HOSPITAL AUTHORITY—REVENUE BONDS— CONSTITUENT MEMBERS—INDEBTEDNESS.

Revenue bonds of a community hospital authority, organized under a special enabling act, are the obligation of the authority, not the constituent members, are payable from its revenues derived from operation of the hospitals and contributions from constituent members, the latter being payable from any funds available irrespective of source, do not constitute a general obligation of the borrower and do not constitute an indebtedness of the constituent municipalities within the meaning of any State constitutional or statutory limitation (Const 1908, art 10, § 21; PA 1945, No 47, §§ 7, 8, as amended by PA 1952, No 170; CLS 1954, § 141.107).

27. MUNICIPAL CORPORATIONS—COMMUNITY HOSPITAL AUTHORITY— STATUTES—HEALTH.

A city, village or township becoming a member of a community hospital authority as a result of voluntary action on its part thereby subjects itself to the provisions of the statute defining its rights and obligations and is, in consequence, bound to assume financial responsibility to the end that the legislative intent and purposes may be effectuated, and the health of its people conserved and protected (CL 1948, § 331.1 *et seq.*, as amended).

28. SAME—COMMUNITY HOSPITAL AUTHORITY—REVENUE BONDS—
DEBT LIMITS.

Cities, villages and townships which are members of a commu-
nity hospital authority do not, as a result of the issuance of
revenue bonds by the authority, incur indebtedness in excess
of fixed limitations (Const 1908, art 10, § 21; PA 1945, No
47, §§ 7, 8, as amended by PA 1952, No 170; CLS 1954,
§ 141.107).

29. HOSPITALS — COMMUNITY HOSPITAL AUTHORITY — LEASING OF
HOSPITAL.

A community hospital authority has authority to lease hospitals,
since the underlying purpose of the enabling act is the fur-
nishing of hospital facilities in the interest of the public health
and for the benefit of the communities served (CL 1948,
§ 331.1 et seq.).

30. SAME—COMMUNITY HOSPITAL AUTHORITY—CONTRIBUTIONS BY
CONSTITUENT MEMBERS—REVENUES.

Contributions by constituent members of a community hospital
authority, formed under pertinent enabling act, constitute a
portion of the revenues of the authority and must be used
in the furtherance of the purposes contemplated by the legis-
lature (PA 1945, No 47, § 7, as amended by PA 1952, No 170).

31. SAME—COMMUNITY HOSPITALS—FINANCING—REVENUE BONDS.

The construction and equipping of community hospitals require
financing, and a feasible plan therefor is by the issuance of
bonds payable from future revenues (PA 1945, No 47, §§ 7, 8,
as amended by PA 1952, No 170).

32. MUNICIPAL CORPORATIONS—COMMUNITY HOSPITAL AUTHORITY—
CONTINUING RESPONSIBILITY—STATUTES.

A municipality becoming a member of a community hospital au-
thority assumes a continuing responsibility under the statute
to which it has subjected itself (PA 1945, No 47, § 7, as
amended by PA 1952, No 170).

33. BONDS—COMMUNITY HOSPITAL AUTHORITY—PLEDGE OF REVENUES
—CONTRIBUTIONS BY CONSTITUENT MEMBERS.

The contributions that constituent members of a community hos-
pital authority are obligated to make, subject to the limita-
tion as to the amount of the tax that may be assessed for
such purpose, become a part of the revenues of the authority
and, as such, may be subjected to the pledge for payment
of revenue bonds (PA 1945, No 47, §§ 7, 8, as amended by
PA 1952, No 170).

34. SAME—REVENUE BONDS OF COMMUNITY HOSPITAL AUTHORITY—
MUNICIPAL CORPORATIONS.

No city, village or township that is a member of a community
hospital authority assumes any direct obligation whatsoever
with respect to the payment of revenue bonds issued by the
authority (PA 1945, No 47, § 8, as amended by PA 1952,
No 170).

35. HOSPITALS—COMMUNITY HOSPITALS—MUNICIPAL CORPORATIONS—
CONTRIBUTIONS—PUBLIC PURPOSE.

The establishing of community hospitals, being for the pro-
tection and preservation of health, is a public purpose for
which constituent municipalities may contribute money, wheth-
er raised by taxation or from other available funds, and ac-
complishment of such purpose is subject to legislative control
(Const 1908, art 8, § 25; CL 1948, § 331.1 *et seq.*, as amended).

36. SAME—COMMUNITY HOSPITAL AUTHORITY—REVENUE BONDS—
PLEDGE OF CONTRIBUTIONS BY CONSTITUENT MUNICIPALITIES—TAX-
ATION—STATE CREDIT.

The pledging of contributions, required by statute of municipali-
ties which have united with a community hospital authority,
to the payment of revenue bonds issued by the authority does
not violate provisions of the Constitution relative to the use
of tax money for a public purpose or the grant of the credit
of the State or a municipality (Const 1908, art 8, § 28; art
10, § 12; CL 1948, § 331.1 *et seq.*, as amended).

37. TAXATION—COMMUNITY HOSPITAL AUTHORITY—MUNICIPAL COR-
PORATIONS—REVENUE BONDS.

The legislature did not surrender its power of taxation, contrary
to provision of the Constitution prohibiting such surrender, by
authorizing municipalities which voluntarily unite with a com-
munity hospital authority to levy a tax up to a certain rate
in order to raise funds to pay contributions required by the
authority pursuant to a statutory formula and which con-
tributions are pledged by the authority for the payment of
revenue bonds issued by it (Const 1908, art 10, § 9; PA
1945, No 47, §§ 7, 8, as amended by PA 1952).

38. COSTS—PUBLIC QUESTION—MANDAMUS—COMMUNITY HOSPITAL
AUTHORITY—REVENUE BONDS.

No costs are allowed in mandamus proceeding to compel execu-
tion of revenue bonds by officer of community hospital author-
ity, a public question being involved (CL 1948, § 331.1 *et
seq.*, as amended).

Petition for mandamus by Robert J. Bullinger, chairman, and others as members, of the governing board of Peoples Community Hospital Authority, a quasi-public corporation, to compel Kenneth W. Gremore, its secretary, to countersign its bonds. Submitted October 18, 1955. (Calendar No. 46,629.) Writ granted November 9, 1955.

*Cozadd & Shangle (Miller, Canfield, Paddock & Stone,* of counsel), for plaintiffs.

*Francis M. Dodge,* for defendant.

CARR, C. J. This case involves the interpretation and validity of certain provisions of PA 1945, No 47, as amended by PA 1949, No 62, PA 1951, No 79, and PA 1952, No 170.* Such statute was enacted for the purpose of enabling cities, villages and townships, or any combination thereof, to join in the formation of hospital authorities for the purpose of establishing and maintaining community hospitals, either within or without their boundaries. Section 1 of the statute as originally enacted permitted such a joinder on resolution of the legislative bodies of the cities, villages, or townships concerned.

Other provisions of the statute declared any such hospital authority to be a body corporate with specific powers designed to enable the carrying out of the legislative purpose. The constituent members were also empowered to raise money by taxation, not exceeding 4/10 of 1 mill on each dollar of assessed valuation, for the purpose of assisting in the construction, maintenance and operation of community hospitals established by an authority. Provision was also made for a governing body in each authority, designated as a hospital board, which,

* CL 1948 and CLS 1954, § 331.1 *et seq.* (Stat Ann 1949 Rev and Stat Ann 1953 Cum Supp § 5.2456[1] *et seq.*).

under the provisions of section 7 of the act, was required to prepare an annual budget covering estimated current expenses and also expenses for capital outlay. The amount of money necessary to be raised by each of the constituent members of the authority was required to be determined on a fair and equitable basis, with due consideration to ratio of the assessed valuation of each member of the authority to the total assessed valuation as equalized.

The statute also granted power to issue bonds to raise money for use in acquiring community hospitals, such bonds to be self-liquidating in accordance with the provisions of PA 1933, No 94, as amended (CL 1948 and CLS 1954, § 141.101 *et seq.* [Stat Ann 1949 Rev, Stat Ann 1953 and 1955 Cum Supp, § 5.2731 *et seq.*]). Bonds so issued imposed no liability on the members of the hospital authority but could be secured only by the property and revenues of the community hospital for the purchase and construction of which they were issued. In the performance of its functions the hospital board was also empowered to acquire property by purchase, lease, gift or condemnation.

The Peoples Community Hospital Authority was organized in 1945 pursuant to the provisions of the statute in question as originally enacted. At the outset 3 villages and 6 townships became constituent members, joining in the organization. Prior to the adoption of the amendments above mentioned the membership was increased to 17, comprising 5 cities, 5 villages, and 7 townships. In 1955 the township of Ypsilanti, in Washtenaw county, joined the Authority, the procedure outlined by the statute, as amended, being observed in the proceeding.

The amendatory act of 1949 made specific provision for the addition of new members to an established authority, and in terms ratified actions and proceedings taken under the original act with refer-

ence to such matter. It was further provided, in section 3 as amended, that any member of a hospital authority might withdraw upon resolution of its governing body, duly accepted by a 2/3 majority vote of the entire governing body of such authority. The right of withdrawal, however, was subject to an adjustment as to liability for outstanding obligations. Section 7 was also amended by inserting specific provisions with reference to the payment by constituent members of an authority of the sums apportioned to them in order to meet the budget, and a new section, designated as section 8a, was added to the act, authorizing the borrowing of money to meet current expenses of operation and maintenance of a hospital established by the authority and the issuance of notes therefor.

The amendment made by the cited act of 1951 had reference to the conveyance of property by a hospital authority. The expressed powers of the board under section 9 of the original act were enlarged, but the changes made are not material in the instant case. PA 1952, No 170, amended the first 8 sections of the act, retaining the changes and additions made by PA 1949, No 62, and making further modifications with reference to the formation of hospital authorities, the addition of subsequent members, the raising of money by taxation in the cities, villages and townships comprising an authority, the procedure of the hospital board, the preparation of the annual budget, and the issuance of bonds. Such modifications have resulted in the instant proceeding. In the main the questions at issue arise under sections 1, 3, 7 and 8, which in their amended form read as follows:

"Sec. 1. Any 2 or more cities, incorporated villages or townships, or any combination thereof, by resolution of their respective legislative bodies, ap-

proved by a majority vote of their qualified electors, may join to form a hospital authority and issue revenue bonds for the purpose of planning, promoting, acquiring, constructing, improving, enlarging, extending, owning, maintaining and operating, either within or without their limits, 1 or more community hospitals, subject to the 4/10 mill limitation hereinafter provided. The power herein granted shall be deemed an enlargement of any power granted to cities, incorporated villages and townships by their respective charters or the laws of the State."

"Sec. 3. The resolution creating such hospital authority shall designate the cities, villages and townships to be included therein and shall set forth the fact that a sum of money not to exceed 4/10 mill of their assessed valuation as last equalized may be requested and certified by the hospital board annually for the purpose of planning, promoting, acquiring, constructing, improving, enlarging, extending, owning, maintaining and operating 1 or more community hospitals and that such sum or any portion thereof may be pledged by the governing body of the hospital authority for the payment of revenue bonds under Act No. 94 of the Public Acts of 1933, as amended, being sections 141.101 to 141.-139, inclusive, of the Compiled Laws of 1948; it may provide that such hospital authority shall become operative upon adoption by a specified number, not less than 2, of such cities, villages and townships. The resolution may fix a time within which the respective units must act in order to be included in such hospital authority. The resolution shall designate the member or members appointed by the legislative body to serve on the governing body of such hospital authority. It may designate a date for the appointed representatives to convene. Such resolution shall embody an agreement to contract with the hospital authority for the hospital care of indigent or other patients to whom such services are furnished at public expense and make payment for

such services. Any city, township or incorporated village may subsequently become a member of any hospital authority, formed under the provisions of this act, upon resolution adopted by the governing body of said municipality approved by a majority vote of their qualified electors and acceptance thereof by resolution adopted by majority vote of the entire governing board of such hospital authority. Any city, township or incorporated village which now or hereafter becomes a member of such hospital authority may, upon request and upon resolution of its governing body, duly accepted by a 2/3 majority vote of the entire governing board of such hospital authority, be released from membership in such hospital authority: Provided, however, That no such city, township or incorporated village may be released from membership in any hospital authority formed under the provisions of this act until all outstanding obligations of said hospital authority that have been incurred after the time of the admission to membership of such city, township or incorporated village and such part of prior obligations as may be agreed to by the board and the governing body of such city, township or incorporated village have been paid, or adequate provision has been made for the payment thereof. All actions and proceedings of any hospital authority relative to the addition of members thereto in manner hereinbefore provided, or as previously provided, prior to the effective date of this act or any amendment thereto are hereby validated, ratified and confirmed with like force and effect as though such actions and proceedings had been fully authorized by statutes existing at such time."

"Sec. 7. Not later than April 1st of each year the hospital board shall cause a budget to be prepared containing an itemized statement of the estimated current expenses and the expenses for capital outlay, including the amount necessary to pay the principal and interest of any outstanding·bonds or

other obligations of the authority maturing during the ensuing fiscal year or which have previously matured and are unpaid, and an estimate of the estimated revenue of the hospital authority from all sources for the ensuing 'fiscal year. The board shall adopt such budget as shall be deemed necessary and shall ascertain what, if any, appropriations are required from the several cities, townships and villages to meet their respective shares of the amount of such appropriations in excess of the estimated revenues. In determining the fair and equitable share of each city and township, the board shall take into consideration the ratio that the total assessed valuation of each as last equalized by the county board of supervisors bears to the total assessed valuation so equalized of all the cities and townships included in the hospital authority. Any village included in the hospital authority shall pay its fair proportionate share of the amount apportioned to the township in which it is located, and in determining the division between the township and village, the amount of their respective last assessed valuation as determined by their respective boards of review may be taken into consideration. The board shall certify to each participating city, township and village the amount to be raised by them and the respective cities, townships and villages shall include such amounts in their next ensuing budgets, and shall pay the amount so certified from any funds they have available or from the proceeds of a tax which they are authorized to levy, in an amount sufficient therefor, but in any event not exceeding 4/10 of a mill. Payment of such sums so certified shall be due and payable to such hospital authority 120 days subsequent to the date upon which local taxes become due and payable in cities, villages and townships participating in said hospital authority. Each city, township and village shall be liable for the amount so certified. The board shall also render to each participating city, township and village, on each July 1 and January 1

during the operation of the hospital or hospitals, a certified report thereof. Each report shall state the condition of the finances, the amount of money expended, the moneys received from all sources, the moneys owing to such board for hospital and medical services and such other information as the board may consider expedient. The board shall also file a copy of such report with the municipal finance commission of the State of Michigan together with such other information as said commission may require. Within 30 days after the effective date of this act or within 30 days after the formation of any new hospital authority, and annually on July 1st thereafter, the hospital board shall file with the secretary of State such report as the secretary of State may require, showing the date of formation, the names of the member communities and such other information as the report may call for."

"Sec. 8. For the purpose of acquiring, purchasing, constructing, improving, enlarging or repairing such community hospitals, the hospital board may issue self-liquidating bonds of the authority in accordance with the provisions of Act No. 94 of the Public Acts of 1933, as amended, being sections 141.101 to 141.139, inclusive, of the Compiled Laws of 1948. Such bonds shall not impose any liability upon the cities, villages and townships included in the hospital authority, other than on the amounts which are assessed against the respective municipalities as provided for herein, which amounts or any portion thereof may be pledged by the governing body of the hospital authority for the payment of said bonds for a period not exceeding 30 years. The amount herein required to be paid by any municipality under the provisions of this act shall be considered to be a part of the revenues of the hospital authority as that term is defined in section 3, subsection (f) of Act No. 94 of the Public Acts of 1933, as amended. Such bonds shall be sold for not less than par and shall bear interest at a rate not in excess of 6 per cent; in the event

a petition for referendum is filed with the secretary of the hospital authority in accordance with the provisions of section 33 of said Act No. 94 of the Public Acts of 1933, as amended, the governing body of the hospital authority shall adopt a resolution establishing the date of such election which shall be not less than 60 days nor more than 90 days after the adoption of such resolution. The secretary of the authority shall, within 5 days after the adoption of such resolution, transmit a certified copy thereof to the governing body of each member community. The governing bodies of the member communities shall forthwith provide for an election in accordance with the resolution so passed, in which the question of issuing such bonds and pledging the authority's revenues including all or any part of the amounts assessed against the respective municipalities as provided for herein, shall be submitted. The ballots for use in such election shall be provided by the authority and the elections shall be conducted in the same manner as all special elections are required to be conducted in the respective communities except that where any part or all of a village belonging to such authority is located in a township belonging to the same authority, the township election shall include that part of the village located in it and the village shall not be required to hold such an election except in that portion of the village not located in a township belonging to such authority. The governing bodies of such member communities shall act as a board of canvassers and shall certify the results of such election to the hospital board, within 5 days after the date of the election, on forms provided by the hospital authority. The hospital board shall compile and tabulate the vote as received from the member communities and certify the result of such election by resolution. Upon the records of such authority and a majority of the total valid votes cast at such an election voting 'yes' on the question submitted shall constitute an approval. Any hospital authority, heretofore organ-

ized and operating pursuant to the provisions of this act, shall have all the authority and rights granted under the provisions of this act or any amendments thereto, relative to the construction of community hospitals, operation of same, issuance of bonds therefor, and pledging of income and revenues therefor, including the amounts assessed to the various member communities."

In August, 1955, the board of the Peoples Community Hospital Authority, by appropriate resolution, set forth its conclusion that adequate and proper service of the public health needs and requirements of the Authority and its constituent members required the construction of 2 new community hospitals, 1 to be located in the village of Wayne and the other in the city of Lincoln Park, and that the construction and equipping of said hospitals would render it necessary to issue revenue bonds pursuant to authority granted by the statute. Accordingly an ordinance was adopted, reciting that the total cost of the projects had been estimated at the sum of $5,989,755, which estimate the board approved. Provision was further made for borrowing $4,300,000 and the issuance of revenue bonds therefor. The incidents of the obligations were specified at length in said ordinance, and provision made for the establishment of an operation and maintenance fund and for a bond and interest redemption fund which should include a separate account to be known as the "debt service reserve." Into the account so specified the ordinance required the payment of all revenues remaining after provision for the requirements of operation and maintenance, and for deficiencies in debt service payments, until the reserve totalled the sum of $275,000. No claim is made in the case that the ordinance provisions are inadequate for the proper protection of bondholders.

The obligations to be issued pursuant to the action of the hospital board were required to be signed by its chairman and secretary. Shortly after the adoption of said ordinance the secretary, by written communication to the board, advised that he would not sign the obligations unless and until certain questions specified by him, 15 in number, should be decided by court action. Thereupon the plaintiffs, all of whom are members of the board of the Hospital Authority, filed their petition in this Court asking that defendant be required to show cause why a writ of mandamus should not issue requiring him to join with the chairman of the board in executing the bonds. The order was issued as prayed and defendant, pursuant thereto, filed answer to plaintiffs' petition. Counsel representing the parties have filed briefs, accepting as the issues in the controversy the specific questions stated by defendant as the bases for his refusal to join in the execution of the bonds. The questions as so stated fairly present the issues that have been raised, and we accept them for the purposes of discussion.

"(1) Section 1 and section 3 of PA 1945, No 47, required simply a resolution of the member municipalities to join the Authority. Said sections of Act No 47 were amended by PA 1952, No 170, to require that the resolution to join the Authority also approve issuance of revenue bonds and set forth the fact that a sum of money not exceeding 4/10 of a mill may be assessed by the hospital board against member municipalities. Most of the present members of the Authority joined prior to 1952. Is it necessary to secure a supplemental resolution from the legislative bodies of such municipalities before bonds may be issued approving the issuance thereof and setting forth the tax liability fact?"

The answer to the question involves consideration of the amendatory provisions of the statute and of the power to adopt them. The problem before us requires a determination as to the intent of the legislature, based on the language used construed in the light of the general purpose sought to be accomplished. *City of Grand Rapids* v. *Crocker,* 219 Mich 178; *Webster* v. *Rotary Electric Steel Company,* 321 Mich 526. It is significant that the legislature in the adoption of the amendatory act of 1952 did not require that townships, villages and cities that were then members of hospital authorities must, in order to maintain their status as constituent members thereunder, adopt supplemental resolutions approving the issuance of bonds and setting forth the fact as to tax liability. Had it been intended to impose such requirement, we think that specific provision to that end would have been made.

Construing together the pertinent provisions of the amending act, we do not find that the legislature has imposed on municipal corporations uniting to form a hospital authority under the act of 1945, or joining such authority prior to the amendment of said act, a different status than possessed by cities, villages and townships joining such an authority, or uniting to form a corporate body under the act, subsequent to the amendments. On the contrary, certain provisions negative any such intent. By way of illustration, section 7, as amended, provides that each member of an authority shall be liable for the amount certified by the Hospital Authority as its fair share of the total sum required to be raised. To such provision no exception is made. The concluding sentence of section 8 further declares that:

"Any hospital authority, heretofore organized and operating pursuant to the provisions of this act, shall have all the authority and rights granted under

the provisions of this act or any amendments there-
to, relative to the construction of community hos-
pitals, operation of same, issuance of bonds there-
for, and pledging of income and revenues therefor,
including the amounts assessed to the various mem-
ber communities."

The provision quoted clearly indicates that the
legislature intended that cities, villages and town-
ships that had previously become members of hos-
pital authorities should continue as such, subject
to the rights, privileges and obligations prescribed
by the statute as amended. Generally speaking, an
intent to give retroactive or retrospective effect to
a legislative enactment will not be presumed. In
*Harrison* v. *Metz,* 17 Mich 377, 382, Justice COOLEY,
speaking for the Court, said:

"We have no doubt that the legislature intended
the act in question—Sess L 1867, p 39 [No 30]—to
affect only the causes of action which should ac-
crue subsequent to its taking effect as law. There
is nothing in the act itself from which we can
gather any different intent, and it is a sound rule
of construction that legislation is to have a prospec-
tive operation only, except where the contrary in-
tent is expressly declared or is necessarily to be
implied from the terms employed."

See, also, *In re Dissolution of Ever Krisp Food
Products Co.,* 307 Mich 182, 213, and *Michigan Bell
Telephone Co.* v. *Public Service Commission,* 315
Mich 533 (66 PUR NS 287).

It is our conclusion that the legislature in the en-
actment of PA 1952, No 170, intended to prescribe
the procedure to be observed in the future by
cities, villages and townships becoming members
of hospital authorities, but did not deem it necessary
or expedient to require that those who had pre-
viously assumed such membership should be required

to take further action in order to become full participating members of their authority, and as such, subject to the rights, duties and obligations imposed by statute. The statute, as amended, required that previously formed and existing authorities should continue their functions and that they, and their members, should become subject after the effective date of the amendatory act to the further incidents provided therein. It was assumed that such authorities, and likewise their members, were subject to the power of the legislature, acting in the furtherance of the public welfare, to make changes in matters of procedure, and to limit or extend the rights granted thereto as the necessity or expediency thereof might require.

In *City of Ecorse* v. *Peoples Community Hospital Authority,* 336 Mich 490, this Court sustained the constitutionality of the act of 1945 against objections there urged. Attention was called to the fact that the act was a health measure and that, in consequence, the subject matter was one of State concern. The decree entered upheld the validity of the amendatory act of 1949, as well as the constitutionality of Act No 47, as passed in 1945. It further set forth that the 17 cities, villages and townships that had united to form the Authority, or had subsequently joined, were all constituent and participating members, and that the Authority had power to plan its budget within the maximum tax rate as fixed by the legislature and to apportion to each participating municipality its proportionate share.

In *Peoples Community Hospital Authority* v. *City of Ecorse,* 342 Mich 510, the liability of the defendant for the payment of the sums certified to it by the hospital board for the fiscal year 1947–1948, and the 3 succeeding years, was upheld. Attention was further directed to the fact that the issues sought to be raised by the defendant had been determined

adversely to it in the prior case brought by it against the Hospital Authority.

The power of the legislature to regulate State agencies, to extend or curtail powers granted to them, subject to constitutional limitations, and to modify the procedure previously established with reference to the exercise of public functions, was under consideration in *Harsha* v. *City of Detroit,* 261 Mich 586 (90 ALR 853). It was there said (pp 591, 592):

"Municipal corporations are State agencies, and, subject to constitutional restrictions, the legislature may modify the corporate charters of municipal corporations at will. 12 CJ, p 1031. Powers are granted to them as State agencies to carry on local government. The State still has authority to amend their charters and enlarge or diminish their powers. 1 Cooley, Constitutional Limitations (8th ed), p 393.

" 'They derive all their powers from the source of their creation; and those powers are at all times subject to the control of the legislature. Such powers, also, in the absence of any constitutional regulation forbidding it, may be enlarged or diminished, extended or curtailed, or withdrawn altogether, as the legislature may determine.' *Rogers* v. *Burlington,* 3 Wall (70 US) 654, 663 (18 L ed 79).

"The power to impose taxes is vested exclusively in the legislative department of government, and cannot be exercised except in pursuance of its authority. The levying of taxes is solely the function of the legislature. 37 Cyc, p 724. Subject to constitutional restrictions, 'it must be taken as generally true that the power to tax is limited in extent, in purpose, and in methods only by the will of the State as expressed in its laws.' 1 Cooley, Taxation (3d ed), p 178; 2 Smith, Modern Law of Municipal Corporations, § 1477.

"Fixing the limit of municipal indebtedness is delegated by the Constitution of this State to the

legislature, which has full power and authority to increase it by general law. 44 CJ, p 1117; 6 McQuillin, Municipal Corporations (2d ed), p 12, § 2366; *Wharton* v. *City of Greensboro,* 149 NC 62 (62 SE 740). The legislature may regulate the amount of municipal indebtedness and the rate of taxation of cities. It is expressly authorized by article 8, § 20, of the Constitution (1908) so to do. Its powers are plenary. It may increase or decrease the limit of bonded indebtedness and the rate of taxation for municipal purposes, subject to the prohibition in the Constitution of this State and of the United States* that such legislation shall not operate directly upon contracts so as to impair their obligation by abrogating or lessening the means of their enforcement. *Wolff* v. *New Orleans,* 103 US 358 (26 L ed 395.)".

See, also, as bearing on the matter of legislative authority, *City of Hazel Park* v. *Municipal Finance Commission,* 317 Mich 582; *Walinske* v. *Detroit-Wayne Joint Building Authority,* 325 Mich 562; *City of Ecorse* v. *Peoples Community Hospital Authority, supra; Rude* v. *Muskegon County Building Authority,* 338 Mich 363.

The cities, villages and townships that became members of the Peoples Community Hospital Authority prior to the adoption of the amendments involved in the instant case must be presumed to have done so with the knowledge that the legislature might further regulate the State agency that had been formed under the act of 1945. The amendments actually made obviously have for their purpose the clarification of the act, certain changes in procedure with reference to future authorities and new members of such corporations previously formed, and a more detailed and specific expression of the powers and functions previously granted, to the end that the purpose of the legislation might be

---

* US Const, art 1, § 10; Mich Const 1908, art 2, § 9.—REPORTER.

accomplished in an efficient manner. As above pointed out, the intent of the legislature is clear and we find no violation of limitations imposed by the Constitution of the State. The conclusion follows that the supplemental resolution referred to in the question as stated is not required.

· "(2) If it is necessary to secure such a supplemental resolution, will it be necessary to secure the approval of a majority of the qualified electors of the member municipalities thereto under the 1952 amendment to said Act No 47?"

In view of the answer to the first question, the inquiry as stated does not call for discussion. The procedure contemplated by the amendments to said Act No 47 under which a city, village or township becomes a member of an authority does not apply to constituent members of previously formed and existing authorities. It may be further noted with reference to these questions that bonds issued under the statute are the obligations of the hospital authority rather than of the constituent members, and that under section 8, above quoted, a referendum may be held pursuant to the provisions of the revenue bond act, above cited, as amended.

"(3) PA 1945, No 47, as amended, gives the Hospital Authority the right to assess a tax of not exceeding 4/10 of 1 mill on the valuation of the member municipalities and it is from this source that part of the revenues for payment of the bonds will be derived. Is this assessment to be made on the assessed valuation, the county-equalized valuation or the State-equalized valuation?"

Section 7 of the amended statute provides that not later than April 1st of each year the hospital board shall cause a budget to be prepared, setting forth estimated current expenses and expenses for capital outlay, including amounts necessary to pay

the principal and interest of outstanding bonds or other obligations of the authority, previously matured and unpaid, or maturing during the ensuing fiscal year. Said budget must also contain a statement of the estimated revenues of the hospital authority from all sources for the ensuing year. The hospital board is required to ascertain what sums will be needed from the constituent members, in excess of estimated revenues, to meet the needs of the authority. In apportioning among the members the sum required to be contributed the board is directed to allot to each its "fair and equitable share," taking into consideration the ratio of the assessed valuation of each member as equalized by the board of supervisors to the total assessed valuation of all the municipalities included in the authority. The board then certifies to each member the amount to be raised thereby, and each is required to make payment thereof from available funds or from the proceeds of a tax which may not exceed 4/10 of a mill. Section 4, which also contains authority for raising money by taxation in the cities, villages and townships constituting a hospital authority, declares that:

"The tax authorized herein shall not exceed 4/10 of 1 mill on each dollar of assessed valuation in each city, incorporated village or township."

The basic requirement is that the apportionment of the sum necessary to be raised as between the constituent members of an authority shall be fair and equitable. The reference in section 7 to the action of the board of supervisors apparently contemplates a situation in which all constituent members of an authority are within 1 county. No specific direction to hospital boards in instances where such is not the case is given. It was unquestionably the intention, however, that each member should bear

its proportionate share. The provision from section 4, above quoted, refers specifically to "assessed valuation." The limiting provision of section 7, to which attention is directed, must be read likewise.

The meaning of the term "assessed valuation" has been considered in prior decisions of this Court. In *Pittsfield School District* v. *Washtenaw County Board of Supervisors,* 341 Mich 388, it was held that the term "assessed valuation" of property subject to taxation, as used in the Constitution, article 10, § 21, added in 1932 and amended in 1948, means the value as fixed by the State board of equalization. In reaching this conclusion attention was directed to *Huron-Clinton Metropolitan Authority* v. *Boards of Supervisors of Five Counties,* 304 Mich 328, where it was said (p 340):

"The State board of equalization is the final authority which determines valuations upon a standard uniform to all counties.* To produce the required uniformity between counties of the district, the Authority tax rate should be determined upon the basis of State-equalized valuation."

The Court also quoted with approval from the case of *Parker* v. *Clatsop County,* 69 Or 62 (138 P 239), in which it was held that the statutory phrase "assessed valuation of the county" meant the State-equalized valuation. Of like import are the decisions in *St. Ignace City Treasurer* v. *Mackinac County Treasurer,* 310 Mich 108 (156 ALR 589), and *Waterford Township* v. *Oakland County Tax Allocation Board,* 312 Mich 556. Under the cases cited the term "assessed valuation" as used in the statute under consideration here must be deemed to be the State-equalized valuation. The conclusion follows, in answer to the specific question stated, that

---

* See CL 1948, § 209.1 *et seq.,* as amended by PA 1949, No 287 and PA 1953, No 24 (Stat Ann 1950 Rev and Stat Ann 1953 Cum Supp § 7.601 *et seq.).*—REPORTER.

in raising money by taxation for the purposes of the Hospital Authority the 16 constituent members in Wayne county and the 2 in Washtenaw county should proceed on that basis.

"(4) Will payment of principal and interest on bonds or payment of operating expenses have first priority on the revenues derived from the assessments of not exceeding 4/10ths of 1 mill on the valuation of the member municipalities made pursuant to section 7 of PA 1945, No 47, as amended?"

The revenue bond act of 1933, previously cited, provides in section 22 (CL 1948, § 141.122 [Stat Ann 1949 Rev § 5.2752]) that a municipal corporation issuing revenue bonds thereunder shall pledge the revenues received by it from the public improvement established, or to be established, for, first, an operation and maintenance fund which shall be sufficient for the ensuing period to cover administration and operation costs and maintenance, and, second, for the payment of the principal and interest upon bonds issued payable out of revenues as the obligations become due. Such fund is designated the "bond and interest redemption fund." Out of revenues remaining in the general receiving fund it is required that amounts necessary for the public improvement, in accordance with the ordinance of the governing body of the borrower, shall be set aside. Such provisions recognize the necessity for sufficient operating funds in order that the improvement established may continue to operate efficiently and produce the revenues necessary for the meeting of obligations incident to construction and operation.

PA 1945, No 47, as amended, provides in section 8 thereof as follows:

"Such bonds shall not impose any liability upon the cities, villages and townships included in the hospital authority, other than on the amounts which

are assessed against the respective municipalities as provided for herein, which amounts or any portion thereof may be pledged by the governing body of the hospital authority for the payment of said bonds for a period not exceeding 30 years."

It is further provided that payments required by an authority from constituent members shall be deemed to constitute revenues within the meaning of that term as defined in section 3, subdivision (f), of the revenue bond act. In said section the scope of the term "revenues" is defined. Under the language quoted the governing board of a hospital authority established under the act may pledge all contributions from constituent members for the payment of the principal and interest of bonds issued in accordance with the statute. Obviously such provision is not wholly in accord with the direction of the revenue bond act of 1933 with reference to moneys required to be placed in the operation and maintenance fund.

Apparently it is anticipated that, in an instance where the hospital authority has insufficient funds for operation, exclusive of amounts pledged for the payment of interest and principal on bonds issued and outstanding, some question may arise with reference to the effectiveness of the pledge. Such a situation would involve, in all probability, a determination of the question as to which statute controls. The language of the hospital authority act, above quoted, is not ambiguous. That the legislature intended to authorize the pledging of all contributions required from constituent members for the payment of obligations to be issued is not open to question. In recognition of the fact that the operation, current expense, and maintenance fund might be depleted, the legislature, by the amendatory act of 1949, incorporated section 8a in the hospital authority act. As before stated, said section authorizes the hospi-

tal board to borrow money to meet current expenses of operation and maintenance, and to issue notes therefor. A method was thus provided for the raising of funds when needed for current operations.

PA 1945, No 47 is a health measure designed to provide a plan under which hospitals for general public use may be established and maintained. It sought to effectuate a special purpose, while the revenue bond act of 1933 must be classified as general legislation. The applicable rule to be applied in determining which shall prevail is stated in 1 Lewis' Sutherland, Statutory Construction, p 532, as follows:

"When a general intention is expressed, and also a particular intention which is incompatible with the general one, the particular intention shall be considered an exception to the general one."

The above statement was quoted with approval in *Mayor of Port Huron* v. *City Treasurer of Port Huron,* 328 Mich 99, 112, where it was said, in further discussion, that (pp 111, 112):

"A special statute shall be given effect as an exception to the general statute in order to carry out the legislative intent. *Board of Education* v. *Blondell,* 251 Mich 528. When a general intention is expressed and also a particular intention which is incompatible with the general one, the particular intention shall be considered as an exception to the general one. *Attorney General, ex rel. Owen,* v. *Joyce,* 233 Mich 619; *Heims* v. *School District No. 6 of Davison Township,* 253 Mich 248, and cases therein cited. Also, see *Reed* v. *Secretary of State,* 327 Mich 108. In *Attorney General, ex rel. Owen,* v. *Joyce, supra,* we held that the special act providing that the board of supervisors might fill vacancies in the office of road commissioner was not repealed by a later general act which provides for the filling of vacancies and appointments of county offices by

the probate court, county clerk and prosecuting attorney, the later act not containing a repealing clause."

The conclusion follows that in the instant case the revenues of the Hospital Authority derived from contributions by constituent members pursuant to the statute must be devoted, to the extent that they are pledged for such purpose, to the payment of the principal and interest on bonds.

"(5) May revenue bonds be issued pursuant to section 8 of PA 1945, No 47, as amended, for the purpose of equipping hospitals and for the purpose of acquiring real estate for sites for the hospitals?"

In considering this question it must be borne in mind that the purpose of the legislature in the enactment of the statute, and amendatory acts, in question here was to provide for the establishing of hospitals through and by which the health of the people of the particular communities involved, and of the State, should be protected. Section 8 authorizes the issuance of bonds for the purpose of "acquiring, purchasing, constructing, improving, enlarging or repairing such community hospitals." Obviously a hospital is not merely a building. It must be equipped in such manner and to such an extent as to permit it to function. The language of the statute must be construed in the light of the purpose sought to be accomplished.

In *Kiefer* v. *German American Seminary of the City of Detroit,* 46 Mich 636, the construction of an act of the State legislature granting defendant seminary 25,000 acres of State swamp land to aid it in "erecting" buildings for its use was involved. The statute* contained a proviso to the effect that the land should be forfeited if the seminary failed to erect buildings pursuant to the terms of a lease or

---

* PA 1861, No 175, amended by PA 1863, No 49.—REPORTER.

grant made by the city of Detroit to said seminary. Some of the lands were sold and the money was used for the acquiring of a building as a result of consolidation with another educational institution. Suit was instituted to test the right of defendant to use the proceeds from the lands granted for the purpose indicated. It was held that the statute should not be construed as requiring the construction of buildings by defendant but, rather, as contemplating that the assistance extended should be directed to the acquiring of facilities to be used for educational purposes. The action of defendant was accordingly upheld.

In accord with the above decision is *Port Huron & Northwestern Railway Company* v. *Richards,* 90 Mich 577, in which recovery was sought on an undertaking executed by defendant to the plaintiff, contingent on the construction of a railway to a certain village and the erection of a station there. Plaintiff had constructed a building to be used as a station and claimed compliance with the agreement. This Court, in denying recovery, held that the agreement should not be construed as merely requiring the erection of a building, but as contemplating facilities requisite for the accommodation of passengers and the handling of freight. See, also, *State, ex rel. Edwards,* v. *Millar,* 21 Okla 448 (96 P 747) ; *Sharp* v. *Police Jury of Parish of East Baton Rouge,* 194 La 220 (193 S 594); *Grauman* v. *Department of Highways,* 286 Ky 850 (151 SW2d 1061).

The statutory provisions to which this question relates must be construed in accordance with the rule recognized in the above-cited cases. An operating hospital is much more than a mere building, and it is equally true that land for its occupancy must be provided. It may be noted in this connection

that section 9 of the act* expressly authorizes the acquiring of real estate. Moneys derived from the sale of revenue bonds pursuant to Act No 47, § 8, may be used for the purpose of properly equipping hospitals established by the Authority and for acquiring necessary real estate as sites therefor.

"(6) Is the amount certified to the member municipalities by the Hospital board and which is to be included in the budget of each member municipality to have priority over all other budget items of the municipality and to be paid in its full amount in any event or is the amount so certified and included in the budget to be subject to reduction because of delinquency in tax collection?"

In discussing this question counsel representing the parties have emphasized the following language in section 7 of the act, as amended:

"The board shall certify to each participating city, township and village the amount to be raised by them and the respective cities, townships and villages shall include such amounts in their next ensuing budgets, and shall pay the amount so certified from any funds they have available or from the proceeds of a tax which they are authorized to levy, in an amount sufficient therefor, but in any event not exceeding 4/10 of a mill. Payment of such sums so certified shall be due and payable to such hospital authority 120 days subsequent to the date upon which local taxes become due and payable in cities, villages and townships participating in said hospital authority. Each city, township and village shall be liable for the amount so certified."

It will be noted that the legislature has made the *sums certified* by the hospital board due and payable 120 days after the date on which local taxes become payable. We do not find in the statute any

---

* This section was amended by PA 1951, No 79.—REPORTER.

provision indicating that the legislature intended to allow a constituent member of a hospital authority to make a deduction from the sum as certified to it because of failure to collect taxes assessed. It is significant that each member may pay the amount apportioned to it, for the purposes of the Hospital Authority, from any funds available for that purpose. It may be noted also, as indicating the legislative intent, that section 8 of the act, as amended, provides that the amount required to be paid by any member of the authority is to be considered. a part of the revenues of that agency, and that the amounts "assessed against the respective municipalities" may be pledged. Obviously these provisions contemplate an absolute obligation to pay on the part of each constituent member of the Hospital Authority, and is in keeping with the express declaration in the preceding section that "each city, township and village shall be liable for the amount so certified." In view of the specific provisions of the statute, a municipality required to contribute to a hospital authority of which it is a member may not claim a reduction in the sum certified to it, as its proportionate share, because of tax delinquencies.

"(7) In the case of member municipalities which are townships, will the amount assessed by the Hospital board be deemed within the 1 mill allocated under certain circumstances to the township, pursuant to PA 1933, No 62, as amended, or will it be in addition to the 1 mill so allocated?"

"(8) In the case of member municipalities which are townships, could the county tax allocation board deny such a township the authority to levy up to said 4/10ths of 1 mill where the township would not qualify for the same under the provisions of section 11 of PA 1933, No 62, as amended?"

Since these questions relate to PA 1933, No 62, as amended,* they may properly be considered together. Said act is commonly referred to as the "property tax limitation act," and its enactment resulted from the adoption at the general election in November, 1932, of the tax limitation amendment, article 10, § 21, of the Constitution (1908). Section 11 of said act, which section was amended by PA 1952, No 87 (CLS 1954, § 211.211, Stat Ann 1953 Cum Supp § 7.71), in defining the duties of the county tax allocation board, provides in subsection (d) thereof as follows:

"(d) The board shall approve minimum tax rates as follows: For the county, 3 mills; for school districts, 4 mills; for townships, 1 mill; for port districts, where established or that may hereafter be established under Act No. 234, Public Acts of 1925, as amended,† which are not coterminous with the counties, 2 mills: Provided, That if the average tax rate levied for the operating purposes of any county or school district or township or port district for its last 3 fiscal years shall be less than such minimum tax rate, such average tax rate shall be the minimum tax rate allowed to such local unit: Provided further, That no local unit shall be allowed a tax rate in excess of what would be required according to its proposed budget."

The proviso as to the minimum tax rate in the event that the average rate for the 3 preceding fiscal years was less than 1 mill for the operating purposes of any county, school district, township or port district, indicates that the legislature had in mind the fixing of the minimum rate of taxation for the operating purposes of the governmental bodies named. The hospital authority act of 1945, as

---

* CL 1948 and CLS 1954, § 211.201 et seq. (Stat Ann 1950 Rev and Stat Ann 1953 Cum Supp § 7.61 et seq.).
† CL 1948 and CLS 1954, § 120.1 et seq. (Stat Ann 1949 Rev and Stat Ann 1953 Cum Supp § 5.2151 et seq.).—REPORTER.

amended, authorizes the members of such an authority to raise by taxation not exceeding 4/10 of 1 mill on assessed valuation in order to meet the obligations imposed on them by action of the hospital board. Money so raised is not for the conduct of the affairs of the township but, rather, to enable the health agency created by the act of the legislature to perform its functions. The language of the statute clearly indicates that the obligation resting on a township, village or city is one assumed in becoming a member of the Hospital Authority, and may not be properly classified with the governmental functions imposed on a township, or other constituent member, by law. It is, of course, true that residents of each contributing member are entitled to the benefits accruing from the construction of hospitals by the Authority, but such benefits result directly from the action of the latter in the performance of its functions. The conclusion follows that the tax levied by a township for the purpose of enabling it to meet its obligation to the State agency of which it is a member is in addition to the minimum tax rate as fixed by the county tax allocation board pursuant to section 11 of PA 1933, No 62, as amended. It is included, however, in the aggregate millage that may be apportioned under the tax limitation amendment to the Constitution, above cited.

Counsel have called attention to the decision of this Court in *Huron-Clinton Metropolitan Authority* v. *Boards of Supervisors of Five Counties,* 300 Mich 1. Involved there was the constitutionality of PA 1939, No 147 (CL 1948, § 119.51 *et seq.* [Stat Ann 1949 Rev § 5.2148(1) *et seq.*]), which provided for the establishment of metropolitan authorities for the development and maintenance of parks and limited access highways. In reaching its conclusion that said act was constitutional, the powers of the legislature with reference to matters of general con-

cern to the people of the State were considered by the Court, and claims that such powers had been exceeded were rejected. The statute in question authorized the commissioners of the Metropolitan Authority concerned to determine the tax rate necessary to raise money required for any year to enable it to perform its functions, not exceeding 1/4 mill on each dollar of assessed valuation of property within the district, and to certify such rate to the board of supervisors of each county comprising such district. It was further required that the taxes for the support of the metropolitan authority should be assessed, levied, and collected as county taxes. In discussing the situation, it was said (pp 24–26):

"The act does not create a separate and independent tax unit to which its portion of our millage tax must be apportioned by the tax allocation boards of the respective counties. Instead, in the exercise of its constitutional powers, the legislature has created the Authority as a public agency for specified purposes and vested it with a right to have and use for such purposes a portion of the county tax of each of the 5 counties, such portion not to exceed 1/4 of 1 mill levied against the counties' assessable property. To that extent the legislature has 'allocated' tax moneys to the Authority. Within that limitation upon proper certification to the respective counties the Authority is entitled to such portion of the county tax as it determines is required for its purposes during the ensuing year. There is no need and no provision for action by allocation boards or boards of supervisors in order that the Authority may be entitled to receive and use the above-indicated portion of the county tax. The act of the legislature is controlling, just as the legislative act is final and controlling wherein it is provided that of our 15-mill tax rate a minimum of 3 mills belongs to the counties, 4 mills to the school district, and 1 mill to the townships, subject to certain conditions

not here material. PA 1933, No 62, § 11, as amended. To hold otherwise than above indicated would almost of necessity defeat the provision in Act No 147, § 7, that the tax rate 'shall be uniform in the district.' In the light of the provision just quoted, as well as other provisions contained in the act, it must be held that the boards of supervisors in the counties comprising the metropolitan district have no discretionary power to determine the amount of the county tax to which the Authority is entitled, if within the 1/4-mill limitation. This is so because, to the extent determined and certified by the Authority to the boards of supervisors, not to exceed the tax rate of 1/4 of 1 mill, the act of the legislature itself in effect pools the county tax of the counties comprising the metropolitan district and appropriates the use of such tax moneys to the purposes of the Authority.

"In section 7 of the act it is provided: 'The commissioners (of the Authority) *may levy* for the purposes of the authority a tax of not more than one-quarter mill.' When read in conjunction with the other provisions of the act and in the light of the manner in which the legislature obviously sought to accomplish the purposes of the act, the words 'may levy' may well be and should be construed to mean 'may determine' or 'may designate.' We think it is clear that the legislature did not in a literal sense contemplate a 'levy' of a tax by the commissioners. Instead, in the same section it is provided that after taking the action by which the amount of the tax is determined by the commissioners, they 'shall thereupon certify to the board of supervisors of each county comprising the district the necessary tax rate to raise such amount. * * * All taxes shall be assessed, levied, collected and returned as county taxes under the general property tax law.' The quoted portion of section 7 clearly contemplates that taxes at the rate certified by the Authority shall be spread by the boards of supervisors of the respective counties comprising the metropolitan dis-

trict upon the tax rolls and levied upon the counties' taxable property; and that the taxes so levied shall be collected and returned in the same manner and by the same officials as county taxes under the general property tax law.*"

The general principles underlying the conclusions reached in the decision of the last-cited case are applicable in the case at bar. Under the provisions of PA 1945, No 47, read in the light of the general purpose sought to be effectuated, we hold, in answer to the questions submitted, that the tax that a township may levy to meet its obligations as a member of a hospital authority is in addition to the millage that may be allocated to it by the county tax allocation board; and that said board may not interfere with the right to make such levy, irrespective of the minimum rate for township purposes contemplated by PA 1933, No 62, as amended.

"(9) In the case of villages and cities which are member municipalities, will the authorization to levy 4/10ths of 1 mill to meet the requirements of the Hospital Authority be within charter or statutory tax-rate limitation or is such taxing authority in addition to such charter or statutory limitations?"

Insofar as legislative intent is concerned, the answer to this question is indicated by the declaration in section 1 of the hospital authority act that:

"The power herein granted shall be deemed an enlargement of any power granted to cities, incorporated villages and townships by their respective charters or the laws of the State."

As pointed out in *City of Ecorse* v. *Peoples Community Hospital Authority, supra,* an authority created pursuant to this statute is a State agency. It is invested with functions concerning the health of

---

* CL 1948 and CLS 1954, § 211.1 *et seq.* (Stat Ann 1950 Rev and Stat Ann 1953 Cum Supp § 7.1 *et seq.*).—REPORTER.

the people of the State. With reference to the performance of such functions the legislature has a broad measure of control. *Harsha* v. *City of Detroit, supra.*

In *City of Hazel Park* v. *Municipal Finance Commission, supra,* the Court quoted with approval from the *Harsha Case,* discussing at some length the power of the legislature with reference to municipal charters and taxation. A repetition of what was said in these decisions would serve no useful purpose. The levy of taxes expressly authorized by the hospital authority act of 1945, as amended, to enable the members of a hospital authority to meet the obligations imposed on them thereunder is not subject to charter or statutory limitations as to tax rates, other than as provided in said act, but the power so given is in addition to taxing authority otherwise granted.

"(10) May cities, villages and townships pay their assessments from sales tax moneys returned pursuant to article 10, section 23, Michigan Constitution?"

The return to local governmental units of a portion of the proceeds of the State sales tax levy was provided for by an amendment to the Constitution adopted at the general election in November, 1946. It now appears as article 10, § 23, of the Constitution (1908).* Said section, which this Court, in *City of Jackson* v. *Commissioner of Revenue,* 316 Mich 694, held to be self-executing, contains no provision restricting the use of such funds by local governmental units to specified purposes. The act governing hospital authorities, as amended, provides that the contribution required by the hospital board from a constituent member may be paid from any

---

* This section was amended in November, 1954. See PA 1955, p 751.—REPORTER.

funds available therefor, or from the proceeds of the tax above discussed. Under the express language of the statute the source of payment is not limited to funds collected from the tax levy. No reason is suggested why moneys received by such a municipality from the sales tax may not be used for the purpose in question, and no such reason is apparent. The question as stated requires an affirmative answer.

"(11) Does the issuance of revenue bonds by the Hospital Authority pledging for their payment the moneys to be paid by the member municipalities pursuant to section 7 of PA 1945, No 47, as amended, constitute the incurring of indebtedness by the member municipalities under charter or statutory debt limitation provisions or provisions requiring an election to incur indebtedness, or the provisions of section 7 of chapter 5 of PA 1943, No 202, as amended,* requiring an increase in the constitutional tax-rate limitation where indebtedness is to be incurred by a municipal corporation which is subject to article 10, section 23 of the Michigan Constitution (1908)?"

In considering this question it is assumed that in the statement thereof it was intended to refer to article 10, § 21, of the Michigan Constitution (1908), the so-called "tax limitation amendment," rather than to section 23 of said article. Under PA 1945, No 47, as amended, bonds issued by a hospital authority are its obligations rather than obligations of the constituent members. Section 8 of the act, as amended, provides specifically "Such bonds shall not impose any liability upon the cities, villages and townships included in the hospital authority." It may be noted also that section 7 of the revenue

* This is a part of the municipal finance act, CL 1948, § 135.7 (Stat Ann 1949 Rev § 5.3188[27]).—REPORTER.

bond act of 1933,* previously cited herein, provides
that bonds issued pursuant to said act shall not be
considered a general obligation of the borrower, or
constitute an indebtedness within the meaning of
any State constitutional or statutory limitation. We
think it clear that the legislature did not intend
that member municipalities of a hospital authority
should be regarded as incurring indebtedness be-
cause of obligations issued by such authority.

A city, village, or township becoming a member
of a hospital authority as a result of voluntary ac-
tion on its part thereby subjects itself to the pro-
visions of the statute defining its rights and obliga-
tions. It is in consequence bound to assume financial
responsibility to the end that the legislative intent
and purposes may be effectuated, and the health of
its people conserved and protected. If such liability
were assumed by express contract executed in ac-
cordance with legislative authority, the situation
presented would be analogous to that involved in
*Walinske* v. *Detroit-Wayne Joint Building Author-
ity,* previously cited herein. There the defendant
was created under PA 1948 (1st Ex Sess), No 31,†
amended by PA 1954, No 113. Said act authorized
any county, and any city or village, the county seat
thereof, to incorporate an authority for the purpose
of acquiring, equipping, and operating jointly a
building or buildings to be used for governmental
purposes. In accordance therewith the city of De-
troit and the county of Wayne formed the defendant
Authority. Agreements were made whereby the
county undertook to appropriate money for the pur-
pose of meeting 40% of the necessary incidental
expenses of the Authority, and the city undertook

---

*CLS 1954, § 141.107 (Stat Ann 1953 Cum Supp § 5.2737).—
REPORTER.

† CL 1948, § 123.951 *et seq.* (Stat Ann 1953 Cum Supp § 5.301[1]
*et seq.*).

to make a similar appropriation for the payment of the remaining 60%.

It was further agreed that the proposed building when constructed should be leased to the county and city in the proportion of 40% to the former and 60% to the latter. The money for the necessary construction and equipment was to be raised by the issuance of revenue bonds in accordance with PA 1933, No 94, as amended.* On the retirement of any such bond issue the authority was empowered by the statute,† which expressly authorized the issuance of such obligations, to convey title to the property to the incorporating units. In accordance with the plan adopted by the Authority, the county and the city, the payment of the bonds was to be secured by proceeds from proposed leases to Wayne county and the city of Detroit, each of which agreed to pay rent in such amounts as to permit the payment of interest and principal for a period extending beyond the date of the final maturity of the obligations. Under the statute the leases were expressly authorized for a period not exceeding 40 years, and the term of the corporation formed by the county and city was fixed at 50 years.

It was contended by the plaintiff in the case that Wayne county and the city of Detroit had in effect contracted to pay the cost of the building, that the bonds to be issued would be full faith and credit obligations of the incorporators of the Authority, and that, in consequence, the obligations were subject to the respective debt limitations of the city and county. This Court, in rejecting the arguments of the plaintiff, said, in part (pp 581, 582):

---

* CL 1948, § 141.101 et seq. (Stat Ann 1949 Rev § 5.2731 et seq.), which has been subsequently amended by PA 1949, No 244, PA 1951, No 63, PA 1952, No 152 and PA 1954, No 136.—REPORTER.

† CL 1948, § 123.963 (Stat Ann 1953 Cum Supp § 5.301[13]).—REPORTER.

"The Authority, not the city and county, is to pay for and erect the proposed building, and is to be the sole obligor on the proposed revenue bonds. The city and county will not pledge their full faith and credit, but they merely agree to pay over a term of years a reasonable annual rental for an absolute necessity the same as they would for any other services. It is true that a prudent investor in the revenue bonds will be attracted by the fact that the city and county agree to pay sufficient rent so as to pay the bonds and interest, that the moral risk of the lessors is the very best, and that a quasi-municipal corporation, like the Authority is the obligor on the bonds. The method is new, but is being adopted by municipal corporations, under enabling acts, to provide for much needed facilities which they otherwise could not have without raising the tax rates they could charge or because of bond debt limitations. Inasmuch as the bonds proposed to be issued by the Authority are not faith and credit obligations of its incorporators, they need not be voted on by the electorate, nor are they subject to the debt limitations of the municipalities.

"The plaintiff further contends that the bonds proposed to be issued by the Authority must be approved by the municipal finance commission. The municipal finance act, CL 1948, § 131.1 *et seq.* (Stat Ann 1949 Rev § 5.3188 [1] *et seq.*), only refers to bonds issued by a municipality as there defined. It does not apply to those issued by the authority."

Of like import is *Rude* v. *Muskegon County Building Authority, supra.*

Under prior decisions of this Court it may not be said that the legislature exceeded its powers in the enactment of the hospital authority act, or that the provisions therein with reference to the status and liability of constituent members are, for any of the reasons suggested by the question as stated, invalid. The cities, villages, and townships that are members of the Peoples Community Hospital Au-

thority will not as the result of the issuance of revenue bonds by such Authority incur indebtedness in excess of fixed limitations.

"(12) Inasmuch as the proposed bonds will pledge for their payment net revenues derived from the operation of the Beyer hospital which is leased from the city of Ypsilanti, does the Hospital board have authority to lease hospitals?"

In section 1 of PA 1945, No 47, as amended, the purposes of a hospital authority created under said act are stated in broad language. Its powers relate to the "planning, promoting, acquiring, constructing, improving, enlarging, extending, owning, maintaining and operating" community hospitals. The language used in the provision quoted and throughout the act is sufficiently broad to authorize the leasing of existing operating hospitals. Section 9, as amended, provides that:

"For the purposes of the authority defined in this act the hospital board may purchase, lease, accept by gift or devise, or condemn private property."

The reference in this provision to the "purposes of the authority" indicates the scope of the power to lease. The underlying purpose is, of course, the furnishing of hospital facilities in the interest of the public health and for the benefit of the communities served. The right to make a lease of the character referred to in the question is clearly granted by the statute.

"(13) May the Hospital board legally pledge, for a period of 30 years for the payment of bonds, the payments required to be made by the member municipalities pursuant to section 7 of PA 1945, No 47, as amended?"

The provisions of PA 1945, No 47, as amended, are not ambiguous and admit of no question as to

the legislative intent. Section 8 specifically provides that:

"Such bonds shall not impose any liability upon the cities, villages and townships included in the hospital authority, other than on the amounts which are assessed against the respective municipalities as provided for herein, which amounts or any portion thereof may be pledged by the governing body of the hospital authority for the payment of said bonds for a period not exceeding 30 years."

The contributions made by each member of a hospital authority, formed under the statute, constitute a portion of the revenues thereof and must be used in the furtherance of the purposes contemplated by the legislature. The construction and equipping of community hospitals require financing, and a feas- ible plan therefor is by the issuance of bonds to be paid from future revenues. A municipality becoming a member of a hospital authority assumes a con- tinuing responsibility under the provisions of the statute to which it has subjected itself. Continuing revenues are obviously essential and the members of the authority are bound in consequence, as long as the bonds are outstanding, to make the contri- butions required of them pursuant to the act of the legislature. The fact that the obligation as- sumed may continue for a period of 30 years does not alter the situation in this respect. *Walinske v. Detroit-Wayne Joint Building Authority, supra.*

*State Highway Commissioner v. Detroit City Controller,* 331 Mich 337, involved the interpretation and application of PA 1941, No 205, as amended by PA 1950 (Ex Sess), No 22,* which provided for the establishment, construction, and maintenance of so-called limited access highways. The State highway

---

* CL 1948, § 252.51 *et seq.,* as amended (Stat Ann 1951 Cum Supp § 9.1094[1] *et seq.*).

commissioner was in terms authorized to enter into contracts with counties, cities and villages, for such construction, which was to be financed by bond issues.   Such a contract was made with the county of Wayne and the city of Detroit, providing for a bond issue in the sum of $80,000,000 payable in annual instalments over a period ending October 1, 1976. For the payment of the principal and interest of such obligations the State highway commissioner pledged the sum of $2,500,000 a year from the State highway fund, and the county and city each agreed to pay $1,250,000 a year from their shares of said fund.   The defendant refused to sign the bonds, and in consequence a mandamus proceeding was instituted to require him to do so.   Questions were raised with reference to the validity of the statute, the contract, and the proposed bond issue.   In sustaining such validity, it was pointed out that under the statute such bonds were not the general obligation of the State, inasmuch as the payment of the principal and interest thereof came entirely from a special fund, namely, the State highway fund.   It was further held that under the statute there was no lending of credit by the State, and that the provision of the statute authorizing a continuing irrevocable pledge of sufficient moneys to pay the bonds and the interest thereon was not open to objection.   The foregoing decision was cited and quoted with approval in *Nichols* v. *State Administrative Board,* 338 Mich 617.

In the instant case the pledge of revenues to the payment of the bonds issued is made by the Hospital Authority and not by its members.   The power to make such pledge is expressly granted by the statute.   As a practical proposition, such action is essential to the issuance and sale of bonds.   The provision of the statute authorizing it is not open to objection on constitutional grounds.   The pay-

ments that the members are obligated to make, subject to the limitation as to the amount of the tax that may be assessed for such purpose, become a part of the revenues of the Authority and as such may be subjected to the pledge.

"(14) Does the pledging of the payments required to be made by the member municipalities for the payment of bonds violate the provisions of article 8, § 25 or article 10, § 12 of Michigan Constitution?"

The provisions of the Constitution (1908) referred to in this question are as follows:

"Article 8, Sec. 25. No city or village shall have power to abridge the right of elective franchise, to loan its credit, nor to assess, levy or collect any tax or assessment for other than a public purpose. Nor shall any city or village acquire any public utility or grant any public utility franchise which is not subject to revocation at the will of the city or village, unless such proposition shall have first received the affirmative vote of 3/5 of the electors of such city or village voting thereon at a regular or special municipal election; and upon such proposition women taxpayers having the qualifications of male electors shall be entitled to vote."

"Article 10, Sec. 12. The credit of the State shall not be granted to, nor in aid of any person, association or corporation, public or private."

As pointed out in considering other questions involved in this proceeding, bonds issued by a hospital authority organized under PA 1945, No 47, as amended, are not general obligations but are in the category of revenue bonds. No city, village or township that is a member of such authority assumes any direct obligation whatsoever with reference to the payment thereof. Each constituent member by becoming such assumes the obligation of contributing

to the Authority revenues in the manner and to the extent provided by the statute. The money so contributed, whether raised by taxation or from other available funds, cannot be used except for public purposes. However, the establishing of community hospitals is of such character. In the protection and preservation of health all citizens of the State are concerned. Contributions to a hospital authority from constituent members are for a public purpose, the accomplishment of which is subject to legislative control.

In *State Highway Commissioner* v. *Detroit City Controller, supra,* a similar question was involved. It was urged that the obligations assumed by the city and by the county violated the inhibitions set forth in the constitutional provisions quoted. This Court held otherwise, pointing out, among other considerations, that the accomplishment of the general purpose underlying the act of the legislature there involved concerned the public generally. In *Hays* v. *City of Kalamazoo,* 316 Mich 443 (169 ALR 1218), the right of defendant city to pay public funds to the Michigan Municipal League, by way of membership dues, was upheld on the theory that the general welfare and public interests of the municipality were thereby served.

It is our conclusion, in view of the situation presented in this proceeding, that the pledging of contributions made by constituent members of a hospital authority to the payment of bonds issued by such authority does not violate the provisions of article 8, § 25, or article 10, § 12, of the State Constitution (1908). There is involved no lending of credit in contravention of said provisions.

"(15) Does the ordinance authorizing issuance of the bonds and pledging the payments required to be made by the member municipalities constitute a

surrender of the power of taxation by such member municipalities to the Hospital Authority in violation of the provisions of article 10, § 9, Michigan Constitution?"

Article 10, § 9, of the Michigan Constitution (1908) provides that:

"The power of taxation shall never be surrendered or suspended by any grant or contract to which the State or any municipal corporation shall be a party."

In considering a similar question raised in *City of Ecorse* v. *Peoples Community Hospital Authority, supra,* it was said (p 503):

"Nor is there any surrender or suspension of the power of taxation as prohibited by article 10, § 9, of the Constitution. The power to tax and the limitation on indebtedness of municipalities is within the discretion of the legislature and may be changed at will. *Harsha* v. *City of Detroit, supra.* The legislature, therefore, had the power to set up a maximum tax rate within which the authority could plan its budget and apportion the proportionate shares thereof to the participating municipalities. See the *Huron-Clinton Case, supra.*"

In *Huron-Clinton Metropolitan Authority* v. *Boards of Supervisors of Five Counties, supra,* the Court rejected a claim that the statute there involved in effect contemplated a surrender of the power of taxation by the members of the metropolitan authority in violation of the section of the Constitution above quoted. In considering such question the Court said, in part (pp 18, 19):

"As hereinbefore stated in substance, this Authority is clearly a State agency which functions in a limited way in a fixed local territory. The State has not 'surrendered or suspended by any grant or contract' to the Authority the power of taxation; but instead the legislature has delegated to it as a governmental agency the power to determine within

a fixed limitation the tax that the local tax officers shall levy and collect for its use. As will be hereinafter noted, by statute (PA 1933, No 62, § 11, as amended [CLS 1940, § 3551-31,* Stat Ann 1941 Cum Supp § 7.71]) like power to share within a specified limit in taxes levied and collected has been delegated to school districts and to other municipal units. But this is not a surrender or suspension 'by grant or contract' of the power of taxation prohibited by article 10, § 9, of the Constitution (1908). Instead, the legislature by so providing has exercised its inherent power to allocate a given portion of tax moneys to governmental units for their uses."

It must be borne in mind also that under the hospital authority act, as amended, authorities created pursuant to its provisions have no power to levy taxes. That function remains vested in the constituent members and may be exercised by them, subject to the statutory limitation as to amount, if necessary to raise required contributions to authority revenues. The situation presented has been discussed in passing on the merits of prior questions submitted in this case, and does not require further consideration. There has been no surrender of the power of taxation by member municipalities whose contributions to the revenues of the Hospital Authority are pledged for the payment of bonds, in violation of the provisions of article 10, § 9, of the Michigan Constitution (1908).

Plaintiffs are entitled to the relief sought in their petition. If necessary, the writ will issue as prayed, requiring defendant to execute the bonds authorized by the Hospital board. A public question being involved, no costs are allowed.

BUTZEL, SMITH, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.

---

* This provision, with subsequent amendments, is now found in CLS 1954, § 211.211.—REPORTER.