## CITY OF ECORSE *v.* PEOPLES COMMUNITY HOSPITAL AUTHORITY.

1. EQUITY—JURISDICTION—MULTIPLICITY OF SUITS.

   The theory of saving a multiplicity of suits as a ground for equitable jurisdiction is that one equitable suit is substituted in place of all other kinds of judicial proceedings by means of which the entire controversy may be finally settled.

2. SAME—MULTIPLICITY OF SUITS—QUO WARRANTO—HOSPITAL AUTHORITY.

   Fact that some questions sought to be determined in bill to declare statute permitting organization of hospital authorities by 2 or more cities, townships and incorporated villages or any combination of them might have been raised in a quo warranto proceedings would not preclude exercise of equitable jurisdiction, where there were other matters to be determined and a multiplicity of suits was avoided by settling of all disputed questions in 1 suit (CL 1948, §§ 331.1–331.11, as amended by PA 1949, No 62).

3. SAME—CONSTITUTIONAL LAW—STATUTES—HOSPITAL AUTHORITY.

   Defendant community hospital authority's motion to dismiss constituent member's bill to hold enabling statute unconstitutional

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 19 Am Jur, Equity § 77 *et seq.*
[4] 11 Am Jur, Constitutional Law §§ 136–138.
[5] 11 Am Jur, Constitutional Law §§ 91, 92.
[6] 11 Am Jur, Constitutional Law §§ 97, 128 *et seq.*
[7, 8, 15] 11 Am Jur, Constitutional Law § 199; 25 Am Jur, Health § 21.
[8] 25 Am Jur, Health § 3; 49 Am Jur, States, Territories, and Dependencies § 36.
[9, 10] 37 Am Jur, Municipal Corporations § 135.
[9, 10] Power of municipalities or other political subdivisions to engage in a joint project or enterprise. 123 ALR 997.
[11] 11 Am Jur, Constitutional Law § 57.
[13–18, 26] 37 Am Jur, Municipal Corporations §§ 4, 19.
[19–21, 26] 37 Am Jur, Municipal Corporations § 79.
[19–21, 26] Right of municipality to invoke constitutional provisions against acts of State legislature. 116 ALR 1037.
[24–26] 13 Am Jur, Corporations § 948.
[24–26] Generally as to management and operation of hospitals, see 26 Am Jur, Hospitals and Asylums § 7 *et seq.*
[27] 14 Am Jur, Costs § 91.

was properly denied, where, if the act were held invalid, irreparable injury would result from acts of public officials in 17 municipalities in attempting to proceed under an invalid law and problems of accounting and taxation are also involved (CL 1948, §§ 331.1–331.11, as amended by PA 1949, No 62).

4. Constitutional Law—Statutes—Courts—Legislature.

The courts should not substitute their judgment for that of the legislature in determining the validity of statutes enacted by the latter.

5. Statutes—Constitutional Law.

A statute must be violative of the Constitution before it may be declared unconstitutional.

6. Same—Presumptions—Constitutional Law.

Statutes are enacted by the legislature, presumably after consideration, and all presumptions are in favor of the constitutionality of the deliberate acts of a co-ordinate department of government.

7. Health—Legislature.

Public health is a matter of State concern in which the legislature is granted a large area of discretion as to the measures to be used.

8. States—Public Interest.

The State may interfere directly or indirectly by any of its agencies wherever the public interest demands it.

9. Municipal Corporations—Community Enterprise.

Two or more municipalities may unite in the promotion of a particular enterprise.

10. Same—Local Self-Government—Community Hospital Authority—Statutes.

The community hospital authority act, permitting 2 or more cities, townships and incorporated villages, or any combination thereof, to incorporate a hospital authority for operating a community hospital, to provide for changes in membership therein, authorize members to levy taxes, issue revenue bonds, borrow money and condemn property does not impair the right of local self-government by the creation of a State agency (CL 1948, §§ 331.1–331.11, as amended by PA 1949, No 62).

11. Constitutional Law—Construction—Maxims.

The maxims *expressio unius est exclusio alterius* and *expressum facit cessare tacitum* are not to be strictly applied in con-

struing provisions of a State Constitution, where to do so
would do manifest violence to the plain intent of the framers
of that law.

12. SAME—METROPOLITAN DISTRICTS—COMMUNITY HOSPITAL AU-
THORITIES.

The provision of the Constitution authorizing the legislature to
empower 2 or more municipalities to establish metropolitan
districts does not expressly or impliedly prohibit the legisla-
ture from establishing community hospital authorities (Const
1908, art 8, § 31; CL 1948, §§ 331.1–331.11, as amended by
PA 1949, No 62).

13. MUNICIPAL CORPORATIONS—AMENDMENT OF CHARTERS—LEGISLA-
TURE.

The legislature may amend the charters of municipalities at will,
subject to constitutional restrictions.

14. SAME—AMENDMENT OF CHARTERS—LEGISLATURE—LOCAL MAT-
TERS.

The legislature may not amend the charters of municipalities
as to purely local matters without the approval of municipal
electors.

15. HEALTH—COMMUNITY HOSPITAL AUTHORITY—LEGISLATURE.

The matter of creating a community hospital authority is a mat-
ter of health, a question of State-wide concern and one in which
the legislature has a large area of discretion.

16. SAME—COMMUNITY HOSPITAL AUTHORITY—MUNICIPAL CORPORA-
TIONS—STATES.

A community hospital authority, as set forth in the enabling act,
is a State agency and, as such, is not a municipal corporation
or a body created by the municipalities involved but by the
State itself (CL 1948, §§ 331.1–331.11, as amended by PA
1949, No 62).

17. STATUTES—LOCAL ACTS—APPROVAL OF VOTERS—COMMUNITY HOS-
PITAL AUTHORITY.

The statute enabling the creation of a community hospital au-
thority by the action of participating municipalities, not be-
ing local in nature, does not require the vote of the local
electors for its approval (Const 1908, art 5, § 30; CL 1948,
§§ 331.1–331.11, as amended by PA 1949, No 62).

18. HEALTH—COMMUNITY HOSPITAL AUTHORITY—TAXATION—STAT-
UTES—LIMITATION ON MUNICIPAL INDEBTEDNESS.

The statute enabling the creation of a community hospital au-
thority by the action of participating municipalities does not

constitute a surrender or suspension of the power of taxation as prohibited by the Constitution, where the statute set forth the maximum tax rate within which the authority could plan its budget and apportion the proportionate shares thereof to the participating municipalities, the power to tax and to set a limitation on the indebtedness of municipalities being within the discretion of the legislature and changeable at its will (Const 1908, art 5, § 30; CL 1948, §§ 331.1–331.11, as amended by PA 1949, No 62).

19. CONSTITUTIONAL LAW—IMPAIRMENT OF CONTRACTS—STATUTES—MATTERS OF STATE CONCERN.

The doctrine of unconstitutional impairment of the obligations of contracts cannot be extended to the exercise of the constitutional power of the legislature to legislate in matters of State concern (Const 1908, art 2, § 9).

20. SAME—STATUTES—VESTED RIGHTS IN CONTINUANCE OF RULE OF LAW.

There can be no vested right in an existing law permitting the creation of hospital authorities, which precludes its change or repeal, nor vested right in the omission to legislate upon such subject, which exempts the municipal relation to the hospital authority from the effect of subsequent legislation upon its subject matter by competent legislative authority (Const 1908, art 2, § 9; CL 1948, §§ 331.1–331.11, as amended by PA 1949, No 62).

21. STATUTES—AMENDMENT—IMPAIRMENT OF CONTRACTS—COMMUNITY HOSPITAL AUTHORITY—MUNICIPAL CORPORATIONS.

An amendatory act, curative in nature, which amended the title and the body of an act enabling municipalities to participate in the creation of a community hospital authority, a matter of public health in which there is State-wide concern, which ratified and approved all actions and proceedings of the authority which were not provided for in the original act but which were acts the legislature had the power to authorize, was not unconstitutional as an impairment of the obligation of contract of the original participating resolutions of the several municipalities involved (Const 1908, art 2, § 9; CL. 1948, §§ 331.1–331.11, as amended by PA 1949, No 62).

22. APPEAL AND ERROR—QUESTIONS REVIEWABLE—PLEADINGS—SUBSEQUENTLY EFFECTIVE STATUTE.

Constitutionality of amendatory act which became effective subsequent to time when all pleadings in suit had been filed was not properly before Supreme Court for consideration, since it was not and could not be mentioned in the pleadings:

(CL 1948, §§ 331.1–331.11, as amended by PA 1949, No 62 and PA 1952, No 170).

23. HEALTH—COMMUNITY HOSPITAL AUTHORITY—RECORD OF PROCEEDINGS—PAROL EVIDENCE TO SUPPLEMENT MINUTES.

Parol evidence may be admitted to show facts omitted from the official record of proceedings of board of directors of community hospital authority, as the minutes may be supplemented but not contradicted.

24. SAME—COMMUNITY HOSPITAL AUTHORITY—BOARD OF DIRECTORS—QUORUM—EVIDENCE—CLERICAL ERROR.

It was proper to supplement record of meeting of board of directors of community hospital authority by parol evidence to show presence of a director who had actually been present when vote was taken as to admission of additional municipalities to membership in the authority and that there was, therefore, a quorum present, the omission of his name from list of those present being a clerical error (CL 1948, §§ 331.1–331.11, as amended by PA 1949, No 62).

25. MUNICIPAL CORPORATIONS—CHARTERS—CITY COUNCIL—IMPOSITION OF TAXES.

Participating resolution of plaintiff city in community hospital authority, now embracing 17 cities, townships and incorporated villages, was not invalid because only 4 members of the 7-member council were present and city charter provides that assessments or taxes may be imposed only by a 5/7 vote of the council, since the resolution involved did not pertain to a tax or assessment contemplated by the city charter (CL 1948, §§ 331.1–331.11, as amended by PA 1949, No 62; Ecorse City Charter [1942], ch 5, § 6).

26. HEALTH—COMMUNITY HOSPITAL AUTHORITY—STATUTES—LOCAL ACTS.

Act amending statute providing for creation of a community hospital authority by 2 or more participating cities, townships and incorporated villages was not purely local in nature in view of existence elsewhere in the State of at least 4 others than one whose validity is involved in instant suit (Const 1908, art 5, § 30; CL 1948, §§ 331.1–331.11, as amended by PA 1949, No 62).

27. COSTS—PUBLIC QUESTION—CONSTITUTIONAL LAW—COMMUNITY HOSPITAL AUTHORITY.

No costs are allowed in suit by member of a community hospital

authority to declare enabling act and its amendments uncon-
stitutional, a public question being involved (CL 1948, §§ 331.1–
331.11, as amended by PA 1949, No 62).

Appeal from Wayne; Miller (Guy A.), J. Sub-
mitted January 9, 1953. (Docket No. 62, Calendar
No. 45,685.) Decided April 13, 1953.

Bill by City of Ecorse, a municipal corporation,
against Peoples Community Hospital Authority, a
corporation, and others for decree declaring PA
1945, No 47, and amendments unconstitutional. De-
cree for plaintiff. Defendant Peoples Community
Hospital Authority appeals. Reversed.

*Earl R. Montie,* for plaintiff.

*Cozadd, Shangle, Cherry & Schmidt,* for defendant
Peoples Community Hospital Authority.

*Jesse W. Bollinger,* for defendant Dearborn Town-
ship.

*Jesse W. Bollinger* and *Samuel H. Schaflander,* for
defendant village of Inkster.

*Frederic J. Keppen,* for defendant city of Lincoln
Park.

*Julius L. Berns,* for defendant city of Melvindale.

*Maxton R. Valois,* for defendant city of River
Rouge.

*Tinkham & Snyder,* for defendant township of
Romulus.

*Amicus curiae:*

*Miller, Canfield, Paddock & Stone.*

BUSHNELL, J. Plaintiff, city of Ecorse, brought this suit in equity for the purpose of obtaining a determination that the defendant Peoples Community Hospital Authority had not been legally or properly created, established or constituted under the authorizing statute so as to make that city an affiliate or constituent member thereof. The court was asked to declare unconstitutional PA 1945, No 47 (CL 1948, §§ 331.1–331.11, as amended by PA 1949, No 62 [Stat Ann 1949 Rev §§ 5.2456(1)–5.2456(11)], and PA 1952, No 170). Plaintiff also claimed that the resolution of its city council, adopted August 5, 1947, "did not constitute legal and binding action on the city of Ecorse so as to make it a member of the 'Authority,' " and that "the rescission and/or disclaimer of membership by the city of Ecorse is binding upon the defendants."

Other municipalities, members of the authority, located southerly and westerly of the city of Detroit, were joined as defendants, namely: The villages of Inkster, Wayne, Flat Rock, Allen Park and Trenton; the cities of Melvindale, River Rouge, Lincoln Park and Ypsilanti; and the townships of Nankin, Dearborn, Huron, Sumpter, Taylor, Romulus and Ecorse.

*Amicus curiae* was granted leave to file a brief here in behalf of other hospital authorities. These are the Mackinac Straits Hospital Authority, whose members are the city of St. Ignace and the townships of Clark, Hendricks, Moran, Portage and St. Ignace, all located in Mackinac county; the Kalkaska County Hospital Authority, whose members are village of Kalkaska and townships of Bear Lake, Boardman, Clearwater, Cold Springs, Excelsior, Garfield, Kalkaska, Oliver, Orange, Springfield and Wilson, all located in Kalkaska county; the Lakeview Hospital Authority, whose members are the villages of Decatur, Gables, Lawton and Paw Paw, and the townships of Almena, Antwerp, Decatur, Hamilton, Porter,

Paw Paw and Waverly, all in Van Buren county; and the South Oakland Hospital Authority, which is presently inactive but has remained in existence "to protect its constituent municipalities with respect to commitments made by the Greater Detroit Hospital Fund," which will provide the necessary hospital services for the area included in this authority.

The defendant authority moved to dismiss the bill on the grounds of lack of equitable jurisdiction, the adequacy of a remedy at law, and that the legal existence of a public or quasi corporation can be inquired into only in a direct proceeding instituted by the State. This motion was denied. The trial judge held that, while some of the questions propounded could be raised in quo warranto proceedings, the ends of justice would be better served and time and labor would be saved if the whole controversy was retained by the equity court. In *Powers* v. *Fisher,* 279 Mich 442, 448, it was said:

"The theory of saving a multiplicity of suits as a ground for equitable jurisdiction is that one equitable suit is substituted in place of all other kinds of judicial proceedings by means of which the entire controversy may be finally settled."

This practice has the advantage of settling all the disputed questions in one action, which is a traditional aim of equity. *Pungs* v. *Hilgendorf,* 289 Mich 46, 55.

Some of the defendants who asked for a declaration of their rights and liabilities filed pleadings which generally support the bill filed by the city of Ecorse; others took the position that the law under which the authority was created is valid, and that all acts taken thereunder were also valid. Some neither admitted nor denied the allegations of plaintiff; another chose to seek relief as a cross-plaintiff;

others took the position that the amendatory act of 1949 was unconstitutional.

All the pleadings were filed prior to the enactment of the amendatory act of 1952, and, hence, the parties were not in a position to make any reference thereto. Nevertheless, the circuit judge discussed the 1952 act in his written opinion filed on May 16, 1952. That act was given immediate effect on April 24th.

At the pretrial hearing on February 28, 1952, the court was unsuccessful in its attempt to get the parties to submit the case on stipulated facts. An extensive statement of the facts and the positions of the various parties was, therefore, prepared and filed on March 20, 1952. It was stated therein that, "unless amended by the parties, they are bound thereby, under the rules of this court." Shortly thereafter the city of Ecorse filed an amendment to the pretrial statement, and the village of Inkster and township of Dearborn filed amended answers. After taking extensive testimony, the trial judge on May 16th filed a written opinion in which he embodied, by reference, the pretrial statement.

It is unnecessary to burden this opinion with extensive quotations from the opinion of the trial judge or the statement, it being sufficient to say that a decree was entered on June 13, 1952, declaring and determining that the cited acts of 1945, 1949 and 1952 were unconstitutional and void, and determining that the authority had been illegally and unlawfully organized, voiding and cancelling all its acts and ordering the authority dissolved and enjoined from levying further assessments or doing any other acts save those necessary in the dissolution, winding up of its affairs, and disposition of its assets and liabilities, under the direction of the court. The authority was permitted to continue its usual course of business during the pendency of an appeal. No costs were allowed.

The first question raised by the appeal of the authority is whether its motion to dismiss plaintiff's bill of complaint should have been granted. This question, in the light of the authorities heretofore cited, must be answered in the negative. See, also, authorities cited in *Diggs* v. *State Board of Embalmers and Funeral Directors,* 321 Mich 508, 514, where the following is stated:

"This Court has repeatedly held that in cases where an irreparable injury will result from the acts of public officials in attempting to proceed under an invalid law, the jurisdiction of equity may be invoked for the purpose of obtaining injunctive relief and a determination as to the constitutionality of the statute that is involved."

With 17 municipalities concerned and problems of accounting and taxation involved, it would seem proper and desirable to resort to equity to determine the entire matter.

It would unnecessarily lengthen this opinion to discuss the numerous questions raised by the participating parties and the *amicus curiae.* Decision turns on the question of the constitutionality of the act of 1945, as amended. The act, as stated in its title, authorized 2 or more cities, townships and incorporated villages, or any combination thereof, to incorporate a hospital authority for planning, promoting, acquiring, constructing, improving, enlarging, extending, owning, maintaining and operating a community hospital; to provide for changes in membership therein; to authorize its member municipalities to levy taxes; to provide for the issuance of revenue bonds; to borrow money and to authorize condemnation proceedings.

As suggested in the brief of the *amicus curiae,* the defendant is not the only hospital authority concerned. The Mackinac Authority has raised funds

and plans to begin the construction of a 24-bed hospital almost immediately. The Kalkaska Authority has in the process of construction a 10-bed combination hospital and health center, which when completed will cost approximately $176,000. The Lakeview Authority contemplates a 44-bed hospital, with construction awaiting the issuance of bonds.

The defendant authority began its operations in 1945 when certain municipalities at the invitation of the village of Wayne formed the authority. Other municipalities were added in 1947, and all of them, as contemplated by the act, appointed their representatives to serve as members of the authority's board of directors. In 1947 the authority acquired a lease from the city of Ypsilanti on the Beyer Memorial Hospital, and has successfully operated this hospital facility since January 1, 1948, for the benefit of its constituent members. It has provided in its annual budget for the accumulation of a fund with which it might build, erect and equip 2 hospitals more suitably located and accessible to all the participating communities. Immediately after the authority commenced to operate the Ypsilanti facility, the council of the city of Ecorse adopted a resolution which purported to rescind its 1947 resolution, and since that time has represented itself as having withdrawn from the authority. The city of River Rouge then took a similar position. The efficacy of both resolutions is denied by the authority.

It is fundamental that courts should not substitute their judgment for that of the legislature. *Attorney General v. Sanilac Board of Supervisors,* 71 Mich 16, 26; *Young v. City of Ann Arbor,* 267 Mich 241; *People v. Powell,* 280 Mich 699 (111 ALR 721); *Buehler v. University of Michigan,* 277 Mich 648, 651. In the *Young Case* the Court said:

"A statute must be violative of the Constitution, the fundamental law, before it may be declared un-

constitutional. Statutes are enacted by the legislature, presumably after consideration, and all presumptions are in favor of the constitutionality of the deliberate acts of a co-ordinate department of government. It is only when the rule established and declared in the Constitution by the people conflicts with the rule of a statute enacted by the people's public servants, the legislature, that the latter must give way."

Undeniably, health is a matter of State concern. *Davock* v. *Moore,* 105 Mich 120, 132 (28 LRA 783). In safeguarding the public health, the legislature is granted a large area of discretion as to the measures to be used, it being no longer questioned that the State may interfere directly or indirectly by any of its agencies whenever the public interest demands it. 3 McQuillin on Municipal Corporations (2d ed), § 942, pp 76–80. It has been held in the comparatively few cases that have arisen in this field that 2 or more municipalities may unite in the promotion of a particular enterprise. See authorities annotated in 123 ALR at pages 997 *et seq.* The act in question does not impair the right of local self-government by the creation of a State agency, or, as styled in this act, a joint hospital authority. This general proposition had attention in *Attorney General, ex rel. Kies,* v. *Lowrey,* 131 Mich 639.

The trial judge stated in his written opinion that, unless specific provision be found in the Constitution, the legislature is powerless to pass an act like the one in question, under which the State's legislative and administrative power is delegated. In support of this statement, reference is made to article 8, § 31, which was added in 1927 to the Constitution of 1908. The legislature was empowered by this amendment to provide by general law for the incorporation of 2 or more cities, villages or townships, or any combination of parts thereof, into metropolitan dis-

tricts for certain purposes, principally parks and public utilities. Under the doctrine of *expressio unius est exclusio alterius,* and *expressum facit cessare tacitum,* it is urged that the absence of the mention of hospitals in that amendment is a limitation upon the power of the legislature. This argument, as applied to constitutional construction, was disposed of early in the judicial history of this State in the case of *Williams* v. *Mayor of Detroit,* 2 Mich 560, and reiterated in *Huron-Clinton Metropolitan Authority* v. *Boards of Supervisors of Five Counties,* 300 Mich 1, 17, where the Court said:

"That   *   *   *   there are some instruments or laws to which such maxims cannot be strictly applied, without doing manifest violence to the plain intent of the framers of the law is   *   *   *   a matter of common experience.

"This is especially true in the construction of State Constitutions."

The legislature was not prohibited from establishing hospital authorities by any express or implied prohibition in article 8, § 31, of the Constitution.

Subject to constitutional restrictions the legislature may amend the charters of municipalities at will. *Harsha* v. *City of Detroit,* 261 Mich 586, 591 (90 ALR 853). It does not, however, have the power to so amend with respect to purely local matters without the approval of the municipal electors. *Utica State Savings Bank* v. *Village of Oak Park,* 279 Mich 568, 577.

We have here a matter of health, which is a question of State-wide concern and in which the legislature has a large area of discretion. The defendant authority is a State agency and, as such, is not a municipal corporation or a body created by the municipalities here involved but by the State itself. See the *Huron-Clinton Case, supra.* The legislation in

question, not being local in nature, does not require the vote of the local electors for its approval under article 5, § 30, Constitution 1908. See, also, *Attorney General, ex rel. Kies,* v. *Lowrey, supra.* Nor is there any surrender or suspension of the power of taxation as prohibited by article 10, § 9, of the Constitution. The power to tax and the limitation on indebtedness of municipalities is within the discretion of the legislature and may be changed at will. *Harsha* v. *City of Detroit, supra.* The legislature, therefore, had the power to set up a maximum tax rate within which the authority could plan its budget and apportion the proportionate shares thereof to the participating municipalities. See the *Huron-Clinton Case, supra.*

It is also urged that the amendatory act of 1949, which contains certain changes in the title of the 1945 act and corrective and clarifying substance in the body of the act, is unconstitutional in that the original participating resolutions of the several municipalities constituted a contract which cannot be impaired. This argument is unsound because it misinterprets the nature of the authority. The doctrine of unconstitutional impairment of the obligations of contracts cannot be extended to the exercise of the constitutional power of the legislature to legislate in matters of State concern.

"There can, in the nature of things, be no vested right in an existing law which precludes its change or repeal, nor vested right in the omission to legislate upon a particular subject which exempts a contract from the effect of subsequent legislation upon its subject-matter by competent legislative authority." *Harsha* v. *City of Detroit, supra,* 594.

The constitutional prohibition (art 2, § 9) against impairing the obligation of contracts is not applicable here. The 1949 act was curative in nature. It also ratified and approved all actions and proceed-

ings of the authority which were not provided for in the 1945 act, but were acts which the legislature had the power to authorize. See *Chemical Bank & Trust Co.* v. *County of Oakland*, 264 Mich 673, 680. The act of 1949 is, therefore, valid.

Although the act of 1952 is not properly before us, because it was not and could not be mentioned in the pleadings, we note in passing that in *Walinske* v. *Detroit-Wayne Joint Building Authority*, 325 Mich 562, this Court upheld legislation which provides that bonds for the construction of a joint city-county building can be paid solely from revenue of the property, which revenue consists of rental payments by the city and county.

The city of Ecorse argues that a quorum was not present on October 16, 1947, when the board of directors of the authority purported to admit certain municipalities to membership. Parol evidence may be admitted to show facts omitted from the official record. *Draper* v. *Village of Springwells*, 235 Mich 168, 172. Minutes may be supplemented, but not contradicted. *Rubatt* v. *Township of Wakefield*, 239 Mich 536, 547. The testimony shows that the claimed absent director was, in fact, present when the vote was taken, hence, the record of the meeting may be supplemented to supply the omission of his name from the list of those present, that being merely a clerical error. The record shows there was a quorum present on October 16, 1947.

Ecorse further argues that its participating resolution was not binding on that city because its charter provides that assessments or taxes may be imposed only by a 5/7 vote of the city council[*] and that but 4 members of the 7-member council were present. The resolution in question did not pertain to a tax or assessment contemplated by the city charter of

---

[*] Ecorse City Charter (1942), ch 5, § 6.—Reporter.

Ecorse, and the vote on the resolution was, therefore, valid.

The argument of the township of Romulus, that the act of 1949 is purely local in nature, is disposed of by the existence of authorities elsewhere in the State.

The acts in question are constitutional.

The decree of the trial judge is vacated and one may be entered here in accordance with this opinion. A public question being involved, no costs will be allowed.

Dethmers, C. J., and Adams, Butzel, Carr, Sharpe, Boyles, and Reid, JJ., concurred.