## CONNOR *v.* HERRICK.

MANDAMUS—EQUALLY DIVIDED COURT—DRAIN CONSTRUCTION CONTRACTS.

Writ of mandamus to compel defendant drain board member to execute construction contract for drain does not issue, where Supreme Court is equally divided as to whether or not it should issue.

Original application by Edward Connor and Charles F. Edgecomb, members of the drainage board for the Black Marsh Drain, and Michigan Sewer Construction Company, a Michigan corporation, against Henry V. Herrick, chairman of the drainage board for the Black Marsh Drain, for writ of mandamus to compel the execution of a construction contract. Submitted April 11, 1957. (Calendar No. 47,-275.) Writ denied July 31, 1957, by equally divided court.

*Berry, Stevens & Moorman* (*Claude H. Stevens,* of counsel), for plaintiffs.

*Julius L. Berns,* for City of Grosse Pointe Woods.

*Gerald K. O'Brien,* Prosecuting Attorney, Wayne County, *Hobart Taylor, Jr.,* and *David E. Flayer,* Assistant Prosecuting Attorneys, for defendant.

REFERENCES FOR POINTS IN HEADNOTES
·14 Am Jur, Courts § 261.

Before us is an original petition for mandamus, filed by 2 members of an intracounty drain board* against the third member of such board, to compel such third member to execute a contract "for the tiling of the Black Marsh drain (an open Wayne county drain) from the Cook road (its southerly terminus) to the southerly line of Private Claim 577 in Wayne county (its northerly terminus)." The remaining petitioner-plaintiff is the contractor selected by the board to do the project job.

It is alleged in the petition and conceded in the answer that due proceedings toward tiling of the drain have been taken preparatory to execution of the required construction contract; that the final apportionment of cost of the project as determined under section 469 (of the code of 1956) is as follows:

"State of Michigan, on account of
     State highways ................     .861017%
County of Wayne, on account of
     county highways ................   1.867492%
City of Grosse Pointe Woods ......  96.084779%
City of Harper Woods ............   1.186712%

                    Total     100.000000%";

that the drain in its present condition constitutes a hazard to the health of Grosse Pointe Woods and Harper Woods; that petitioner-plaintiff Michigan Sewer Construction Company's low bid for the project in the sum of $519,550 was duly accepted by the board; that the defendant chairman of the board was duly authorized to execute the required contract documents, and that he thereupon refused to execute them for reasons stated by him in a letter addressed to the board under date of March 8, 1957.

* See chapter 20 of "the drain code of 1956" (PA 1956, No 40). The chapter is entitled "Intracounty drains; Public corporations." (CL 1948, §§ 280.461–280.489 [Stat Ann 1956 Cum Supp §§ 11.1461–11.1489].)

The reasons so assigned by the defendant chairman constitute plaintiffs' statement of questions involved. They are listed as follows:

"1. Do the provisions of chapter 20 of the drain code of 1956 requiring assessments at large against public corporations to defray the cost of constructing and improving drains and requiring the levy of an ad valorem tax to pay such at large assessments, contravene the provisions of section 25 of article XIII [8?] and section 12 of article 10 of the Michigan Constitution (1908) which prohibit the levy of a tax for a private purpose?

"2. Do the provisions of chapter 20 of the drain code of 1956 requiring assessments at large against public corporations to defray the cost of constructing and improving drains and requiring the levy of an ad valorem tax to pay such at large assessments, constitute a taking of property without due process of law as to those taxpayers whose lands are not in the areas to be served, in violation of section 16 of article 2 of the Michigan Constitution (1908)?

"3. Do the provisions of chapter 20 of the drain code of 1956 requiring assessments at large against public corporations to defray the cost of constructing and improving drains and requiring the levy of an ad valorem tax to pay such at large assessments, contravene the home rule powers given to cities and villages under sections 20 and 21 of article 8 of the Michigan Constitution (1908) in respect to matters of local municipal concern?"

Plaintiffs contend all 3 questions should be answered in the negative and, in their brief under heading "Relief," advise as follows:

"We respectfully request an early decision in this case inasmuch as not only this but other projects are being held up pending such decision. Two of such other projects (the Girard and Milk River) are companion projects with the Black Marsh and also drain the cities of Harper Woods and Grosse Pointe

Woods. Contract bids have been received on all 3 projects and the contractors are ready to start construction when they are assured that the act is constitutional so that bonds can be sold to finance the projects."

We are separately advised by counsel that the 3 companion projects call for issuance of bonds amounting to a sum in excess of $10,000,000; that a number of similar projects are pending in Macomb county calling for bond sales in the sum of approximately $20,000,000; that an instituted drain project in Oakland county costing in excess of $38,000,000 has proceeded under the statute to tentative apportionment of its cost and, as to the Oakland project, that the statute before us is under attack in litigation now pending in the Oakland circuit. It would appear from these representations that municipal bond sales aggregating $68,000,000 await our "early decision" on present record and briefs.

Black, J. (*after stating the facts, for denial of the writ*). It is time that this Court move to end the practice of pressured issuance, in original mandamus proceedings, of what in reality are advisory *ex parte* opinions dealing with validity, and consequent marketability, of yet unissued municipal bonds. There is a better way to provide judicial service in present instance and, if counsel had pursued it last year in the mentioned Oakland county litigation, an effective decree might well have been entered by this time. We shall presently consider such litigation.

On strength of the petition and answer summarized above—they were filed together March 20, 1957—we issued the following order under date of April 2, 1957:

"In this cause a petition is filed by plaintiffs for the allowance of an order to show cause, and a brief

in opposition thereto having been filed, and due consideration thereof having been had by the Court, it is ordered that the answer heretofore filed herein be considered as the answer to the order to show cause, and that the cause be submitted to this Court for final determination as soon as possible."*

Four days later the printed record was filed together with plaintiffs' printed brief. The cause was orally argued April 11th. On that date we received the defendant's brief, in typewritten form. The latter accepts plaintiffs' statement of involved questions and statement of facts. It goes on to say, under the heading "statement of facts":

"It is a well-known fact that upon delivery of municipal bonds, the officer executing such bonds must make a certificate to the effect that no litigation of any nature is now pending or threatened questioning the authority under which the obligations are issued, or affecting the validity thereof. The defendant, as chairman of the drainage board for the Black Marsh drain, cannot make such a certificate until the matter has been settled by this Court."

Stated question 2 presents an asserted right of due process, "as to those taxpayers whose lands are not in the areas to be served." If we are to resolve such question, should we not specially insist that these taxpayers—whose lands are not "to be served" by the project yet are to be taxed generally for its benefits—be duly informed by judicial process that a suit is pending, the design of which is that of drawing upon them for aid of those "to be served"? So far as I am concerned the Fourteenth Amendment gives us imperative answer. We were told again, not too long ago, that "The fundamental requisite of due process of law is the opportunity to be heard"

---

* Our order erroneously recites filing of a brief in opposition. No such brief has been filed.

(*Mullane* v. *Central Hanover Bank & Trust Co.*, 339 US 306, 314 [70 S Ct 652, 94 L ed 865]), and that "This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." (P 314 of *Mullane's* report.) *

Forceful echoes of these precepts came to us when *Covey* v. *Town of Somers*, 351 US 141 (76 S Ct 724, 100 L ed 1021); and *Walker* v. *City of Hutchinson*, 352 US 112 (77 S Ct 200, 1 L ed 2d 178), were handed down. Here numerous taxpayers—of Wayne, Oakland and Macomb counties—, nominated by this mandamus petition for payment of $68,000,000 in project bills, are not before us, as represented classes or otherwise. Undoubtedly, and on the whole, they are not even aware that their rights and interests have been brought here for summary judicial determination. That we should attend their right of hearing and choice between acquiescence and contest is, I think, quite evident. This Court, equally with the courts of the Union, is obligated to guard and enforce every right secured by the national Constitution—including the right to be heard—whenever such right or rights are involved in any proceeding before us (*United States* v. *Bank of New York & Trust Co.*, 296 US 463, 479 [56 S Ct 343, 80 L ed 331]). And there is no want of means to attend such right or rights when issues respecting validity of municipal bond issues appear. Our declaratory judgment statute, PA 1929, No 36 (CL 1948, § 691.501

---

* If, in the instance of a true declaratory proceeding, absence of interested parties is ground for denial of relief (*Central High School Athletic Ass'n* v. *City of Grand Rapids*, 274 Mich 147; *School District No. 1, Fractional*, v. *Lansing School District*, 331 Mich 523), we indubitably should deny relief on corresponding ground in a summary proceeding like this.

*et seq.* [Stat Ann § 27.501 *et seq.*]),* and our Court Rule No 16 (1945) calling for notice to and representation of interested parties as a class, adequately provide (if utilized) due process for judicial determination of the above-stated questions plus such others as might and probably would appear in contested litigation.

Turning now to the previously mentioned Oakland county litigation. It consists of 2 chancery cases. Counsel for the present plaintiffs appears as counsel for the defendants in each such case. The 2 cases were consolidated and set for trial (with an assigned judge ready to proceed with trial) on October 30th last; yet they have not as yet been tried. Perusal of the pleadings in both (Township of Southfield† *v.* Main, Oakland county drain commissioner, including numerous intervening parties; City of Troy *v.* Main, Oakland county drain commissioner, including numerous intervening parties) discloses that true adversaries confront each other and that the chancellor at trial will receive the benefit of controverted presentation of all questions necessary to final and effective adjudication of construction and validity of said chapter 20. We hold in these circumstances that mandamus proceedings, brought here on this meager record of brotherly pleadings, should not be permitted to supersede or interfere.

Here, unlike *Graham* v. *Miller,* 348 Mich 684, no one represents the public interest or involved segment thereof. No one has bothered to notify the

---

* Mr. Justice WIEST, writing for the Court shortly after enactment and constitutional approval (*Washington-Detroit Theatre Co.* v. *Moore,* 249 Mich 673 [68 ALR 105], of such statute, said this:

"Under former practice a friendly suit would have been brought, entertained, and right in the matter adjudicated. Now, under the declaratory judgment act, there is presented issuable questions of fact and law of great public moment, and, if the act is to serve at all, it must be permitted to serve in this instance." *Muskegon Heights* v. *Danigelis,* 253 Mich 260, 265 (73 ALR 696).

† The Southfield Case involves what is known in the pleadings as the "Twelve Town Storm Relief System."

attorney general and he is not here by intervention. The situation at once suggests that said Rule No 16 be strengthened by requirement that the attorney general be duly served, with pleadings filed in actions designed to test validity of proceedings taken or to be taken for the purpose of issuing obligations payable out of taxes or special assessments, and that we simultaneously declare regard of such actions as being those in which the people of this State are interested as a class. Probably, and as was relatedly observed more than a year ago (*In re Fitch Drain No. 129,* 346 Mich 81, 91), we shall get around to the task in the "sweet by-and-by."

Aside from foregoing considerations, I admit to shrinking from final pronouncement meaning "go ahead" with projects running into many millions of dollars solely on strength of pleaded conclusion, agreed to by agreeable answer, that the Black Marsh drain in present condition constitutes a hazard to the health of Grosse Pointe Woods and Harper Woods. Allegations of such nature are not usually resolved without hearing and taking of testimony. We should not, public nature of the issue considered, accept a stipulation of nonadversary counsel attesting strength of the very drawbar of the case—that it is "necessary for the public health to locate, establish and construct" the drain in question (quotation from section 463 of said chapter 20).

These "friendly lawsuits," where public officials get together for submission to a court of selected issues concerning which there is little or no disagreement amongst them, undoubtedly are begotten of need for immediate adjudication of validity of the legal proceedings by which required public improvements are usually financed. The good faith of such officials, when they proceed in that manner, can hardly be questioned. Nevertheless, and however praiseworthy their energetic effort to get at the job

of improvement may be, we have no right at their instance to countenance or encourage elimination of the occasionally tedious requirements of due process.

It is no answer to say that our writ, if issued in this case, will be held binding only as to the parties before the court, and that presently absent taxpayers and municipalities—of all 3 counties—will remain free to justiciably question validity of proceedings taken in pursuance of said chapter 20. I think we should face with candor the realities of the situation that would obtain, once we signify favorable answer to the posed questions and the bonds required to finance this and the related drain projects are sold. What juridical chance would any taxpayer have of overcoming the accomplished fact of actual investment and going construction involving millions? The early American parable of the dog with wax legs, attempting to chase the asbestos cat through what in dignified quarters is known as the nether world, comes to mind. Judges of our generation have not yet forgotten what happened when this Court upset statutory proceedings on strength of which several million dollars worth of drain bonds had previously been sold (see the bellwether cases of *Clinton* v. *Spencer,* 250 Mich 135; and *Township of Lake* v. *Millar,* 257 Mich 135). They would be quite loath, I apprehend, to vote sufferance anew of the repercussive lamentations heard then throughout the valley of Detroit's Griswold street.

I would summarize the proceeding before us in the words of Mr. Justice Brewer. Speaking for the court in *Tregea* v. *Modesto Irrigation District,* 164 US 179, 185–187 (17 S Ct 52, 41 L ed 395), quoted at length in *Anway* v. *Grand Rapids Railway Co.,* 211 Mich 592, 604, 605 (12 ALR 26), he said:

"But going beyond this matter, we are confronted with the question whether, in advance of the issue of bonds and before any obligation has been assumed by the district, there is a case or controversy with opposing parties, such as can be submitted to and can compel judicial consideration and judgment. This is no mere technical question. For, notwithstanding the adjudication by the courts of the State in favor of the validity of the order made for the issue of $400,000 of bonds, and, notwithstanding any inquiry and determination which this court might make in respect to the matters involved, there would still be no contract executed; no obligation resting on the district. All that would be accomplished by our affirmance of the decision of the State court would be an adjudication of the right to make a contract, and unless the board should see fit to proceed in the exercise of the power thus held to exist, all the time and labor of the court would be spent in determining a mere barren right—a purely moot question. * * *

"The directors of an irrigation district occupy no position antagonistic to the district. They are the agents and the district is the principal. The interests are identical, and it is practically an *ex parte* application on behalf of the district for the determination of a question which may never in fact arise. It may be true, as the supreme court says, that it is of advantage to the district to have some prior determination of the validity of the proceedings in order to secure the sale of its bonds on more advantageous terms, but that does not change the real character of this proceeding. * * *

"It may well be doubted whether the adjudication really binds anybody."

We said as much, and the writer refers here to Justice Brewer's final observation as quoted, in *Central High School Athletic Ass'n* v. *City of Grand Rapids,* 274 Mich 147, 153.

When and if the Constitution authorizes issuance by this Court of advisory opinions we of course will cheerfully comply with the people's directive. Presumably, and in such event, rules of court will provide due process for all legally interested in and affected by advices so given. Until then, I think we should terminate that which is no part of the judicial function—the practice of determining in nonadversary proceedings questions raised solely to assist immediate sales of municipal bond-products.

I vote to deny mandamus.

SMITH and VOELKER, JJ., concurred with BLACK, J.

CARR, J. (*for granting the writ*). This proceeding involves the validity of provisions of chapter 20 of the drain code of 1956 (PA 1956, No 40 [CL 1948, §§ 280.461–280.489 (Stat Ann 1956 Cum Supp §§ 11.-1461–11.1489)]). Said chapter relates to the construction and improvement of intracounty drains deemed necessary for the public health, where the cost is to be assessed wholly against public corporations. It is in substance a re-enactment of chapter 18A* of the prior drain code, added thereto by PA 1951, No 265. Provision is made in said chapter as re-enacted for the filing of a petition with the county drain commissioner by 2 or more public corporations subject to assessments to defray the cost of such project. A county drainage board, composed of the drain commissioner, the chairman of the county board of supervisors, and the chairman of the board of county auditors, is created by the statute. In the event that the county has no board of auditors the chairman of the finance committee of the board of supervisors acts as a member.

* CLS 1954, § 278A.1 *et seq.* (Stat Ann 1952 Rev and Stat Ann 1955 Cum Supp § 11.147[1] *et seq.*).

On the filing of a petition for the construction or improvement of a drain the county drain commissioner is required to call a meeting of the drainage board. Provision is made for the giving of notice and for a determination by the board as to the sufficiency of the petition, the practicability of the proposed project, and the public corporations to be assessed for the cost. A public hearing of objections to the project and to the assessment of the cost is required, with notice thereof by publication not less than 20 days prior to the date of hearing. Notice to each public corporation proposed to be assessed is directed, the notice to the State to be served on the State highway commissioner. Following such hearing the drainage board makes its final order of determination, specifying the public corporations to be assessed if it finds the petition sufficient and the project practicable. Other provisions of the chapter relate to the procuring of plans and specifications.

Public hearing on the apportionment of the cost of the drain, or improvement thereof, is required to be held, with due notice by publication in a newspaper and by registered mail to the public corporations proposed to be assessed. Proceedings in certiorari may be instituted within 20 days after the filing of the final order of determination or of the order of apportionment. Following the confirmation of such apportionment the chairman of the board, the drain commissioner of the county, is required to prepare a special assessment roll, based either on the estimated cost of the drain or the actual cost thereof, if ascertained, against the several public corporations directed to be assessed. Such assessments may be ordered paid in annual instalments, not exceeding 30. After the approval of the assessment roll the chairman of the drainage board is directed to certify to each public corporation assessed

the total amount of such assessment with the number of instalments and the rate of interest upon instalments unpaid when due. Assessments against the State are certified to the State highway commissioner and paid from State highway funds. It is made the duty of tax levying officials of the public corporations assessed to levy sufficient taxes to pay the assessment instalments and interest as the same become due.

The drainage board is empowered to issue bonds on behalf of the drainage district in anticipation of the collection of assessments, and to pledge the faith and credit of such district for the payment thereof. The manner of execution of said bonds is specified in the statute and the moneys collected for the payment thereof are required to be kept in a separate bank account by the county treasurer. In the event that the original assessments are found to be insufficient to pay principal and interest on bonds, the drainage board is authorized to make additional assessments as may be found necessary. Other provisions of the chapter are designed to facilitate the accomplishment of the legislative purpose, but are not directly involved in this proceeding.

The pleadings filed in the instant proceeding disclose that there is presently existing in Wayne County an open drain designated as the "Black Marsh drain," located wholly within the city of Grosse Pointe Woods and serving said municipality and the adjacent city of Harper Woods, as well as certain State and county highways. Pursuant to chapter 18A of the prior drain code, above cited, said cities filed a petition with the county drain commissioner for the improvement of the drain in question by tiling it. It is conceded that the various proceedings required by the statute in force when the petition was filed, and by chapter 20 of the present drain code under which the project is being

executed, have been duly taken. The estimated cost thereof, determined on a percentage basis, was apportioned by order of the drainage board as follows: State of Michigan—.861017%; county of Wayne—1.867492%; city of Grosse Pointe Woods—96.-084779%; city of Harper Woods—1.186712%. It further appears that no review of the orders of the drainage board has been sought. Bids for the project were advertised for and received. The plaintiff Michigan Sewer Construction Company, being the lowest bidder, was awarded the contract, and the drainage board by resolution authorized and directed the chairman to execute said contract for and on behalf of the Black Marsh drainage district. The cost of the project as set forth in said proposed contract is the sum of $519,550.

Following action by the board, the chairman, by formal communication to it, refused to sign the contract because of certain questions that had been raised with reference to the validity of the assessment provisions of chapter 20 of the drain code. He pointed out as the basis for such refusal that the drain, if improved in accordance with the petition filed by the cities of Harper Woods and Grosse Pointe Woods, will serve only a part of each of said cities, and that, in consequence, the assessment at large against each of said cities, to be raised by a general ad valorem tax is unconstitutional because in violation of designated provisions of the Michigan Constitution (1908), namely, article 2, § 16; article 8, §§ 20, 21, and 25; and article 10, § 12. Upon such refusal the other members of the drainage board filed their petition in this Court asking on behalf of said board that an order issue requiring the defendant, the chairman of the board, to show cause why a peremptory writ of mandamus should not issue requiring him to proceed in accordance with the

resolution directing that he execute the contract with the Michigan Sewer Construction Company.

On the filing of the petition this Court entered an order in accordance therewith, directing that the answer to the petition previously filed be considered as the answer to the order to show cause and that the controversy be submitted to the Court for final determination. Counsel for plaintiffs have filed a brief with reference to the objections raised by defendant in his letter to the drainage board, above mentioned, and the prosecuting attorney of Wayne County and 2 of his assistants have submitted a brief on behalf of the defendant, asserting, in substance, the correctness of his claims. The matter was argued orally before the Court by counsel on each side, and the city attorney of Grosse Pointe Woods, which is required by the order of apportionment to raise by ad valorem tax an amount in excess of 96% of the total cost of the project, has filed a memorandum expressing approval of the position of the plaintiffs and requesting the Court to grant the relief sought by them.

The county of Wayne has not formally intervened in the proceeding although, as above noted, the prosecuting attorney and his assistants are representing the defendant drain commissioner. Neither has there been a request for leave to intervene on behalf of the State. The cities that will be required to bear the greater part of the financial burden sought the improvement of the drain in question in the interests of public health. It must be assumed that the action of the municipalities was prompted by the belief that the substitution of tile for the open drain now existing was reasonably required for the protection of the public. The question now before this Court concerns the validity of the statute under which the parties are seeking to proceed. As in prior instances of like character, this Court concluded that

it might properly assume jurisdiction of the controversy in the form presented. It is doubtless true that the constitutional questions at issue might have been raised in a different form of action, and perhaps with added parties. Under the situation actually existing, however, in view of the fact that the order to show cause was issued and that the Court has permitted the cause to be argued and submitted by the parties, the case should now be determined on its merits.

The constitutional provisions invoked by the defendant as the basis for his refusal to execute the contract approved by the drainage board have been involved in numerous prior decisions of this Court. Article 10, § 12, provides that:

"The credit of the State shall not be granted to, nor in aid of any person, association or corporation, public or private."

The express limitation on the power of the State with reference to lending its credit for the purposes indicated applies with equal force to municipalities of the State. *Detroit Museum of Art* v. *Engel,* 187 Mich 432; *Younglas* v. *City of Flint,* 345 Mich 576. Article 8, § 25, of the Constitution (1908), likewise provides that no city or village shall have power "to loan its credit, nor to assess, levy or collect any tax or assessment for other than a public purpose."

The basic question in the instant case is whether the statute under which plaintiffs claim the right to proceed involves the raising of money by taxation for other than a public purpose. It will be noted that under the express language of chapter 20 of the drain code a drain may not be established or improved except when necessary for the public health. In the instant case no claim is made that any private purpose will be served by substituting tile for the existing open drain. It has been repeat-

edly recognized in this State, and elsewhere, that the protection of public health is a matter of governmental concern and within the scope of the police power. In *Davock* v. *Moore,* 105 Mich 120, 132, 133 (28 LRA 783), it was said:

"The care of the public health is a police power. The several States of the Union possess a general police power, by which persons and property are subjected to all kinds of restraints and burdens in order to secure the general health, comfort, and prosperity of the State. Whatever differences of opinion may exist as to the extent and boundaries of the police power, and however difficult it may be to render a satisfactory definition of it, there seems to be no doubt that it does extend to the protection of the lives, health, and property of the citizens, and to the preservation of good order and public morals. They belong emphatically to that class of objects which demand the application of the maxim, '*Salus populi suprema lex;*' and they are to be attained and provided for by such appropriate means as the legislature may devise."

In *Oakland County Drain Com'r* v. *City of Royal Oak,* 306 Mich 124, there was involved the establishment and operation of a sewage-disposal system which was designed to be a self-liquidating county revenue project except as to certain preliminary expense. In discussing the arguments of the respective parties to the cause, it was said (p 143):

"Furthermore, as Oakland county, in establishing the proposed sewage-disposal system, is performing an authorized county function in respect to public health, the expending of money in the initial establishment of such system would not constitute a loan of the county's credit."

In *City of Highland Park* v. *Oakland County Drain Commissioner,* 312 Mich 407, the plaintiff, which was the owner of certain bonds of a storm sewer

drain district in Oakland county, instituted a proceeding to require the treasurer of the county to pay the deficiency on said bonds from the county's general fund. Reliance was placed on a provision of the State statute directing that in the event that the moneys available in the drain fund were insufficient to pay the principal or interest of such bonds payment should be made by the county out of its general fund, subject to reimbursement to said fund out of drain taxes thereafter collected. The trial judge held that the statute imposed on the county liability to pay only such sums on bonds as it could obtain through reimbursement from the drainage district. This Court disagreed with the conclusion and remanded the case for issuance of a writ of mandamus to compel payment of the amount due from the general fund of the county. In reaching such conclusion it was said, in part (p 416):

"The ability of the county to obtain full reimbursement from drain taxes thereafter collected was not a condition precedent to its obligation to pay the deficiency. The payment of the deficiency on the outstanding bonds in question would not cause the total debt of Oakland county to exceed the constitutional limitation. It is clear that, recognizing the necessity of establishing drains as a measure of public health and welfare, the legislature intended to make drain bonds a more attractive and safer investment by requiring a county to pay from its general fund any deficiency accruing on said bonds. It did not intend to limit the county's obligation on drain bonds to the amount of drain taxes it might thereafter collect from the district."

After citing prior cases supporting the decision, it was further stated (p 422) that:

"It is not within our province to consider the wisdom of the statute, but only to ascertain the legislature's power to enact it. *Oakland County*

*Drain Com'r* v. *City of Royal Oak,* 306 Mich 124. In the proper exercise of its plenary power, the legislature directed one unit of county government to use its funds in the aid of another unit. The statute did not impose, continue or revive a tax in violation of Const 1908, art 10, § 6. *Moore* v. *Harrison,* 224 Mich 512. It did not operate as a grant of credit in violation of article 10, § 12. It did not require the county to engage in a work of internal improvement in violation of article 10, § 14. Its title was sufficient and not violative of article 5, § 21. *Regents of University of Michigan* v. *Pray,* 264 Mich 693. Other questions presented do not require consideration."

In *City of Ecorse* v. *Peoples Community Hospital Authority,* 336 Mich 490, there was involved the constitutionality of PA 1945, No 47, as amended (CL 1948, §§ 331.1–331.11, as amended by PA 1949, No 62 [Stat Ann 1949 Rev §§ 5.2456(1)–5.2456(11)]), and PA 1952, No 170. The purpose of the act was the protection of the public health by rendering available hospital facilities in communities that might take advantage of the statute. In sustaining the validity of the statute against the objections raised thereto, it was said (pp 501–503):

"Undeniably, health is a matter of State concern. *Davock* v. *Moore,* 105 Mich 120, 132 (28 LRA 783). In safeguarding the public health, the legislature is granted a large area of discretion as to the measures to be used, it being no longer questioned that the State may interfere directly or indirectly by any of its agencies whenever the public interest demands it. 3 McQuillin on Municipal Corporations (2d ed), § 942, pp 76–80. It has been held in the comparatively few cases that have arisen in this field that 2 or more municipalities may unite in the promotion of a particular enterprise. See authorities annotated in 123 ALR at page 997 *et seq.* The act in question does not impair the right of local self-govern-

ment by the creation of a State agency, or, as styled in this act, a joint hospital authority. This general proposition had attention in *Attorney General, ex rel. Kies*, v. *Lowrey*, 131 Mich 639. * * *

"We have here a matter of health, which is a question of State-wide concern and in which the legislature has a large area of discretion. The defendant authority is a State agency and, as such, is not a municipal corporation or a body created by the municipalities here involved but by the State itself. See the *Huron-Clinton Case, supra* [*Huron-Clinton Metropolitan Authority* v. *Boards of Supervisors of Five Counties*, 300 Mich 1]. The legislation in question, not being local in nature, does not require the vote of the local electors for its approval under article 5, § 30, Constitution 1908. See, also, *Attorney General, ex rel. Kies*, v. *Lowrey, supra*."

The statute involved in the last cited case was also under consideration as to certain of its provisions in *Bullinger* v. *Gremore*, 343 Mich 516. Among other issues raised it was contended that the obligations assumed by cities, villages and townships, becoming members of a hospital authority organized under the statute constituted a violation of article 10, § 12, of the Constitution (1908). In rejecting the contention it was pointed out (pp 562, 563) that:

"Each constituent member by becoming such assumes the obligation of contributing to the Authority revenues in the manner and to the extent provided by the statute. The money so contributed, whether raised by taxation or from other available funds, cannot be used except for public purposes. However, the establishing of community hospitals is of such character. In the protection and preservation of health all citizens of the State are concerned. Contributions to a hospital authority from constituent members are for a public purpose, the accomplishment of which is subject to legislative control.

"In *State Highway Commissioner* v. *Detroit City Controller*, 331 Mich 337, a similar question was involved. It was urged that the obligations assumed by the city and by the county violated the inhibitions set forth in the constitutional provisions quoted. This Court held otherwise, pointing out, among other considerations, that the accomplishment of the general purpose underlying the act of the legislature there involved concerned the public generally. In *Hays* v. *City of Kalamazoo*, 316 Mich 443 (169 ALR 1218), the right of defendant city to pay public funds to the Michigan Municipal League, by way of membership dues, was upheld on the theory that the general welfare and public interests of the municipality were thereby served.

"It is our conclusion, in view of the situation presented in this proceeding, that the pledging of contributions made by constituent members of a hospital authority to the payment of bonds issued by such authority does not violate the provisions of article 8, § 25, or article 10, § 12, of the State Constitution (1908). There is involved no lending of credit in contravention of said provisions."

The claim in the instant case that the constitutional provisions referred to are violated by chapter 20 of the drain code is not tenable. We are not dealing with the raising of money by taxation and its diversion to private industry. The protection of the public health is a public purpose and within the functions of government under the police power. The holdings of this Court in the cases above cited and in other decisions of like nature are conclusive in this regard.

The conclusion above indicated that money raised by taxation for the protection and promotion of the public health and welfare involves taxation for a public purpose quite largely answers the claim that article 8, §§ 20 and 21, of the State Constitution, is violated by the provisions of chapter 20 of the drain

code relating to the raising of money for a project thereunder. Said sections read as follows:

"Sec. 20. The legislature shall provide by a general law for the incorporation of cities, and by a general law for the incorporation of villages; such general laws shall limit their rate of taxation for municipal purposes, and restrict their powers of borrowing money and contracting debts.

"Sec. 21. Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or passed by the legislature for the government of the city or village and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this State."

The interpretation of said sections was discussed by this Court in *Attorney General, ex rel. Lennane,* v. *City of Detroit,* 225 Mich 631. After pointing out that the police power rests in the State and that the home-rule act had not delegated to municipalities a general exercise of such power, it was said (p 638):

"Nor do the constitutional provisions above quoted work such result. While the municipality in the performance of certain of its functions acts as agent of the State it may not as such agent fix for the State its public policy. That power has not been delegated to these agents of the State. Unless delegated in some effective way the police power remains in the State."

The general principle at issue was stated by the Court in *Huron-Clinton Metropolitan Authority* v. *Boards of Supervisors of Five Counties,* 300 Mich 1, 12, as follows:

"Subject only to limitations and restrictions imposed by the State or Federal Constitutions, the State legislature is the repository of all legislative power. Constitutional provisions are to be regarded as limitations, not grants of such power. *Doyle* v. *Election Commission,* 261 Mich 546.

" 'In passing upon the constitutionality of State legislation, it is necessary to point out in the Constitution of the State the limitation which has been placed by the people through the Constitution upon the power of the legislature to act, before it may be declared unconstitutional.' *In re Brewster Street Housing Site,* 291 Mich 313, 333.

" 'The legislative authority of the State can do anything which it is not prohibited from doing by the people through the Constitution of the State or of the United States.' *Attorney General, ex rel. O'Hara,* v. *Montgomery,* 275 Mich 504, 538."

In discussing the nature of plaintiff Authority and the purpose of the legislature in providing for its creating, the Court further stated (pp 18, 19):

"As hereinbefore stated in substance, this Authority is clearly a State agency which functions in a limited way in a fixed local territory. The State has not 'surrendered or suspended by any grant or contract' to the Authority the power of taxation; but instead the legislature has delegated to it as a governmental agency the power to determine within a fixed limitation the tax that the local tax officers shall levy and collect for its use. As will be hereinafter noted, by statute (PA 1933, No 62, § 11, as amended [Comp Laws Supp 1940, § 3551–31, Stat Ann 1941 Cum Supp § 7.71]) like power to share within a specified limit in taxes levied and collected has been delegated to school districts and to other municipal units."

In accord with these decisions are the cases hereinbefore cited, particularly *City of Ecorse* v. *Peoples Community Hospital Authority* and *Bullinger* v. *Gremore.* What was there said need not be repeated.

The statutory provisions involved in the case at bar are an exercise of the police power of the State, designed in their operation to protect and promote the public health, and the subject matter is of such nature as to be within the powers of the legislature under the Constitution. Said provisions are not at variance with the sections of article 8 above quoted.

Article 2, § 16, of the Constitution (1908) provides, insofar as material here, that no person shall be deprived of life, liberty or property, without due process of law. The suggestion in the instant controversy is that a property owner whose property is taxed but not directly benefited by the improvement of the drain here in question is thereby deprived of the protection of the constitutional guaranty and that chapter 20 of the drain code is therefore unconstitutional. It may not be said that the State is so limited in the raising of money to effectuate the carrying out of measures enacted pursuant to the police power of the State that it cannot impose the financial burden so entailed on property that is not directly benefited. Persons and property alike, subject to the jurisdiction of the State, owe a duty to contribute to the support of government. Even though there appears to be an absence of specific benefit to property or persons subjected to taxation, nonetheless that which serves to protect and conserve the peace, health, safety and general welfare of the people of the State operates to the benefit of all. The prior decisions of the Court above cited conclusively indicate that the argument based on article 2, § 16, of the Constitution is without merit.

We conclude that plaintiffs are entitled to the relief sought in the instant proceeding. If found necessary a writ of mandamus should issue as prayed.

The questions at issue being matters of public concern, no costs are allowed.

DETHMERS, C. J., and SHARPE, and KELLY, JJ., concurred with CARR, J.

EDWARDS, J. (*for denial of the writ*). The proceedings in this matter present a problem of serious moment to this Court for reasons which have been spelled out by Mr. Justice BLACK. The case currently pending before us in its present form represents, in essence, an attempt to secure an advisory opinion as to the validity of a bond issue from a. Supreme Court not constitutionally authorized to issue same. Constitution of 1908, art 7, § 4. Generally, failure has met attempts by legislation or litigation to employ the courts for legal advice rather than for decision of justiciable controversies between adverse parties. *Anway* v. *Grand Rapids Railway Co.*, 211 Mich 592 (12 ALR 26); *In the Matter of the Application of the Senate*, 10 Minn 78; *Reply of Judges*, 33 Conn 586; *In re Constitutionality of House Bill No. 222*, 262 Ky 437 (90 SW2d 692, 103 ALR 1085); *State, ex rel. LaFollette*, v. *Dammann*, 220 Wis 17 (264 NW 627, 103 ALR 1089); 14 Am Jur, Courts, § 56.

On the record as it now stands before us, we are confronted by a suit by 2 members of a drainage board against a third member. on an agreed statement of facts and with an obvious common purpose. The relief sought represents affirmation by issuance of a writ of mandamus of plaintiffs' allegation that the provisions creating said board being chapter 20, the drain code of 1956 (PA 1956, No 40) "are not unconstitutional for the reasons set forth by defendant or for any other reason." The clear and present duty to sign the construction contract for the Black Marsh drain in eastern Wayne county is claimed to be a duty owed by defendant to the individual members of

the board who are plaintiffs and not presumably to the board itself.

The record discloses that 2 municipalities, Harper Woods and Grosse Pointe Woods, plus the county of Wayne and the State of Michigan will be required, in varying percentages, to repay the bonds scheduled to be issued for purposes of this construction contract. None of these parties are before this Court although patently it is sought herein to secure final adjudication of matters directly affecting them and their citizens.

I would deny the writ because: (1) On the present record we do not find a justiciable controversy between proper and adverse parties; (2) We find genuine doubt that the case in its current status provides for any fair representation of taxpayer and public interests in the political subdivisions to be affected; (3) There is doubt as to whether all of the legal issues which pertain to the validity of this bond issue are properly raised or argued before us at this time.

I do not join in Justice BLACK's opinion, however, because it appears to me that he would send these parties away without remedy here and require them to pursue the longer and more costly method of seeking trial court adjudication and subsequent appeal.

The fact that a case is a test case does not bar this Court from accepting original jurisdiction—particularly where, as here, legal rather than factual issues are presented and the matter is of great public concern. We have frequently recognized that where an administrative official refuses on advice of bond counsel to sign or issue contract or bonds for major public works that a petition for original writ of mandamus will lie in this Court on the part of the public authority which claims the violation of a clear and present duty. *Graham* v. *Miller,* 348 Mich 684; *State Highway Commissioner* v. *Detroit City Controller,* 331 Mich 337; *Dearborn School District No.*

7 v. *Cahow,* 289 Mich 643; 34 Am Jur, Mandamus, § 12, pp 59, 60.

This Court recently considered issues raised pertaining to validity of school bonds issued by the State of Michigan, which issues were brought before us in a somewhat similar proceeding. *Graham* v. *Miller, supra.*

There were these differences:

1. In the *Graham Case* the political subdivision, the school district which would be affected by taxes for repayment of the bond issue, was the moving party before the Court. In the current proceeding, the municipalities and the county of Wayne and the State of Michigan which are to be affected by the proposed bond issue in that they will be required to repay same are none of them before this Court as formal or intervening parties. Nor is this action brought in the name of the public corporation directly concerned—the drainage board.

2. In the *Graham Case* the attorney general, under authority vested in him by statute (CL 1948, §§ 14.28, 14.101 [Stat Ann 1952 Rev §§ 3.181, 3.211]) appeared as-a representative of the people of the State to assure public representation of taxpayer and public interests and to lend assurance to the Court that all pertinent issues were raised. He has not appeared here.

An original writ of mandamus in this Court is a discretionary writ.

"Mandamus is a summary and extraordinary writ issued in the sound discretion of the court. Owing to the drastic character of the writ, the law has properly erected safeguards around it, and regard should be had for the exigency which calls for the exercise of the discretion, the interests of the public and of third persons, the nature and extent of the wrong or injury which would follow upon a refusal of the writ, and the promotion of substantial justice.

The writ will not issue in doubtful cases, but only where the right involved and the duty sought to be enforced are clear and certain and where no other specific and adequate mode of relief is available to the complaining party." 34 Am Jur, Mandamus, § 32.

Until this Court is assured that it has before it the form and substance of an adversary proceeding, with all pertinent issues vigorously argued, and with proper representation of the rights of all interested parties, the writ should be denied without prejudice.